REUBEN L. CLOUSE, APPELLEE, v. COUNTY OF DAWSON, APPELLANT.

74 N. W. 2d 67

Filed December 30, 1955. No. 33838.

*Edward A. Cook, III*, for appellant.

*Smith Brothers*, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

Plaintiff brings this action to recover for personal injuries and property damage sustained by him in an automobile accident which he alleges was caused by a defective condition of a road maintained by the defendant, the County of Dawson. Judgment was entered on the verdict of the jury for $1,080. The defendant appeals.

On the morning of July 6, 1954, at about 4:25 o'clock, plaintiff was driving his automobile in a westerly direction on the county road on which the accident occurred. He states that he was probably driving from 45 to 50 miles an hour. The automobile was in good mechanical condition. The road was 24 feet wide and graveled. The road was dry and the day was clear. It was not light enough to see by daylight but light enough that his car lights "didn't do a great deal of good." The road was uphill as it approached the turn

where the accident occurred. The grade was shown to be 3 percent. The turn was to the left about 45 degrees. The turn to the left was the beginning of a curve which skirted the south end of a canyon and returned to its westerly course. The road was banked at the turn. There was a grassy shoulder about 10 feet in width on the right side of the road where it turned to the southwest. Beyond the grassy shoulder was a canyon which was about 20 feet deep at the spot where plaintiff went into it, and deeper to the north. There was no warning sign apprising the public that a turn in the road was being approached.

The plaintiff testifies that the accident happened in the following manner: He was driving west at a speed of 30 to 50 miles an hour. He usually drove at a speed of 45 to 50 miles an hour, and was probably driving that fast. He was not familiar with the road. It was an ordinary graveled road. The day was clear, but at that time of day his car lights did not do much good. It was too dark to drive without lights. He was watching the road but went into the curve before he realized there was a turn to the left. He applied his brakes and turned to his left, but could not avoid going off the road. He went some distance southwest on the grassy shoulder before he went into the canyon which was 20 feet deep at that point. He says his wheels slid a distance of 15 steps before he struck the grassy shoulder of the road, the marks beginning right at the beginning of the curve. He says he could not see the turn in the road as he came up the hill, although the turn might have been seen in daylight. He says that there was an electric light line which went straight west across the canyon. The grassy shoulder "fit in with the road enough so that I didn't see any obstruction there of any kind." There was no sign or marking as he approached the turn to indicate a turn or dead end there. He says he could not have made the turn at the speed he was traveling had he known that the turn was there,

but that he would have slowed down. had he known it. He says that previous turns on the road were marked, although the evidence shows that all of them were not marked with safety warning signs at that time. He says that he had no vision in his right eye and that his vision without glasses was not too good. He says that as he entered the turn, a bug or miller got on the left lens of his glasses. He pawed at the insect and accidentally pulled his glasses off. He says that he was then in the turn and that the insect and loss of his glasses had nothing to do with the accident. He suffered some personal injuries, and his automobile was seriously damaged. There was evidence of contributory negligence and conflicting statements by the plaintiff that we do not deem important in view of the findings of the jury. The defendant contends that the foregoing evidence is insufficient to sustain a verdict for the plaintiff, and assigns as error the failure of the trial court to sustain its motion for a directed verdict at the close of all the evidence. We shall first determine the correctness of the court's ruling in denying defendant's motion for a directed verdict.

At common law there was no right of action against a county for the recovery of damages resulting from a defective highway or bridge. The extent of the liability of a county in this state for damages of this character is prescribed by statute. Olson v. County of Wayne, 157 Neb. 213, 59 N. W. 2d 400, and cases therein cited. The applicable statute provides: "If special damage happens to any person, his team, carriage or other property by means of insufficiency or want of repair of a highway or bridge, which the county or counties are liable to keep in repair, the person sustaining the damage may recover in an action against the county, * * *; Provided, however, such action is commenced within thirty days of the time of the injury or damage occurring; * * *." § 39-834, R. R. S. 1943. Under this statute· the county is not an insurer of the safety of the users

of its roads and bridges or of the safety of the roads and bridges maintained by it for the use of the public. The duty of the county in this respect will not be extended beyond the words and fair implications of the statutory liability. Olson v. County of Wayne, *supra.*

The liability of the county in the present case is based upon the failure of the county to erect and maintain a safety warning sign to the east of the curve where the accident occurred. The rule governing the duty of a county to erect and maintain safety warning signs was announced in Olson v. County of Wayne, *supra,* as follows: "A county is not obligated to erect and maintain safety warning signs along its highways apprising the public of conditions such as curves, turns, location of bridges, and similar situations that may be hazardous, unless the duty to exercise reasonable and ordinary care in the maintenance of its highways requires it to do so at a particular location."

The record in this case shows that the highway was 24 feet wide. The road was level and smooth. It was an ordinary graveled highway. The turn was approximately a half turn to the left as distinguished from a full right angle turn. The turn was banked in the ordinary and usual way. Clearly there was no duty on the part of the county to erect and maintain a safety warning sign under the foregoing rule if these were all the facts involved. It is the contention of the plaintiff, however, that there was a canyon approximately 10 feet beyond the right edge of the road that made the turn so hazardous that a duty arose on the part of the county to erect and maintain a safety warning sign east of the turn for the safety of users of the road.

In Tomjack v. Chicago & N. W. Ry. Co., 116 Neb. 413, 217 N. W. 944, the facts, briefly stated, were: The highway was a well-graded and graveled road located in the main on a section line, but, in order to accommodate it to the Elkhorn River, the road for some distance lies west of the section line. The railroad was north of

the river. The road where it crossed the railroad track was constructed with a sharp turn to the right in order to cross the highway bridge across the river. A few feet south of the railroad crossing the railroad built a culvert across the highway to carry the water collected on its right-of-way. The car in which the plaintiff was riding was driven over the railroad crossing and into the ditch at the west end of the culvert. Plaintiff alleged that the railroad company failed to place the bridge in the line of travel and that the culvert was not guarded by a light, sign, or warning of any kind. In denying a recovery as a matter of law, the court said: "If the car in which the plaintiff was riding had followed the traveled line of the road and had crossed the railroad track in the proper place, it would have found itself on the bridge or culvert. The evidence shows that the car went so far to the right that it missed the culvert or bridge entirely. Where a culvert, adjacent to its tracks and on its right of way across a public highway, is built by a railroad company in accordance with the general plans of highway and has been adopted as a part of the highway, negligence will not be predicated upon it merely by reason of its location and dimensions.

"The second claim of negligence, as to the lack of guard or warning, is, it seems to us, equally as untenable as the first. If we hold that a 31-feet wide culvert is not sufficient crossing for a stream or ditch and that it must be guarded, or hold that every turn in the road is ground for actionable negligence, unless some one is stationed there with cap and bells to warn the wild and reckless, then we shall lay upon those who build and maintain roads a greater burden than we feel the law justifies. But that is exactly what the plaintiff asks us to do in this case. It was the duty of the driver of the car after dark on this road to proceed so that his headlights would mark out the traveled road, and if he proceeded faster than he was able to see the road ahead

of him, or, if he failed to keep a lookout, he was guilty of negligence."

In Dickenson v. County of Cheyenne, 146 Neb. 36, 18 N. W. 2d 559, plaintiff proceeded downhill on a foggy morning at about 4:30 a. m. into a dead-end road which required him to turn either east or west, and crashed into the far side of a borrow pit. There were no signs to warn users of the turn. Plaintiff claimed he never saw the turn until he was right in it. In reversing the judgment and dismissing the case the court said: "In addition to the repair of the highways, the only other provision in this statutory limitation placed upon recovery of damages against a county is in the clause providing that if any special damage happens to any person 'by means of insufficiency' of the highway. This important word 'insufficiency,' as used in this section, may be defined as being inadequate to the need, use, or purpose of the highway. The plaintiff charges that it was insufficient by reason of not having some kind of warning signs installed either along the road, before one reached the dead end, or across the dead end itself. * * *

"We cannot believe that the failure to put up a sign showing that the road turns, which turn can easily be seen 400 to 750 feet back, is such an omission as would charge the county officers with negligence in their duty in that regard."

The case of Olson v. County of Wayne, *supra,* involved the following factual situation: The county constructed and maintained a bridge on an angle across the highway that required a sharp turn immediately before and at the entrance to the bridge. There were no warning signs or devices to inform users of the road of the alleged dangerous situation, nor any guardrails or barriers to protect travelers from the asserted hazardous condition of the bridge. The car in which plaintiff was riding struck the bridge and went into the ditch on the right side of the bridge. The trial court directed a verdict for the defendant, and in affirming the

judgment this court said: "Generally negligence may not be predicated on a curve or variation in a dirt or county road or the location or dimensions of a bridge placed therein or adjacent thereto according to road plans unless it is so obviously dangerous that no reasonable or prudent man would approve the plans. The crookedness of a road duly located does not usually render a county liable for injuries resulting therefrom. * * *

"It is alleged as negligence that appellee failed to maintain signs or devices to apprise the traveling public of the dangerous situation at the bridge. There was nothing of this nature west of the bridge to give warning of it or that there was any unusual situation which should be approached by a traveler with alertness and caution. * * * If he had followed the road there would have been no accident. There is no requirement of law that a county erect and maintain safety warning signs of conditions such as curves, turns, locations of bridges, and the like, unless the duty to do so at a particular location is dictated by reasonable and ordinary care in the maintenance of its highway."

We point out that the alleged dangers set forth in Tomjack v. Chicago & N. W. Ry. Co., *supra,* and Olson v. County of Wayne, *supra,* involved situations in the traveled portion of the highways. In those cases it was held that the failure to erect and maintain safety warning signs was not required and did not constitute negligence. In Dickenson v. County of Cheyenne, *supra,* the danger alleged was the existence of a borrow pit at the road's dead end and it was there held that the failure to erect and maintain safety warning signs did not constitute negligence on the part of the county. While these cases are not strictly in point on the facts, they point the way to the result required in the present case.

There is no evidence in this case, nor is it contended, that there was a defect within the limits of the highway itself. The danger complained about, and which the plaintiff contends required the erection and maintenance

of a safety warning, was an external hazard existing outside the limits of the highway. There may be situations where the source of danger, although situated outside the limits of the highway, is of itself so direct a menace to travel over the road, and susceptible to protection or remedial measures which can be reasonably applied within the boundaries of the road, that the failure to employ such measures will be regarded as a lack of reasonable repair, or of reasonable care for the safety of travelers. The duty of a county in reference to marginal and external hazards has not been extended beyond the requirement that the highways shall be kept in a reasonably safe condition as against such incidents as are likely to and actually do occur in using the highway for purposes of travel by persons using them while in the exercise of reasonable care. 25 Am. Jur., Highways, § 529, p. 810. The duty of a county to warn against dangerous places or hazards beyond the limits of the highway exists only where such places are substantially joining the highway, or in such close proximity thereto as to be in themselves dangerous, under ordinary circumstances, to travelers thereon who are using reasonable care. Warning signs are intended to make the highway safe, and not to make or define its limits so as to warn travelers not to go outside them. 25 Am. Jur., Highways, § 411, p. 704.

In the instant case the road was well graded and graveled. It was of adequate width for ordinary use. The turn was rounded and banked. The roadside where the turn commenced was several feet higher than the road and could be seen at a distance in daylight. From the side of the road to the canyon was approximately 10 feet, all of which was covered with native grass. These facts are borne out by photographs contained in the record.

We think the general rule is that the liability of a county to warn users of a highway does not extend to hazards beyond the boundaries of the highway except

as they may endanger travelers within its boundaries who are using ordinary care. The highway must be kept safe for such use as should reasonably be anticipated. Actual anticipation is not the true test, but is what one should under the circumstances reasonably anticipate as the consequences of his conduct. The county should be charged with the duty to anticipate only those consequences which in the ordinary course of human experience might reasonably be expected to result from the ordinary use of the highway in the exercise of due care. There is no duty to warn of dangers that cannot be foreseen and, under such circumstances, the duty of foresight should not be arbitrarily imputed.

The condition of the road, the nature of the curve, and the 10 feet of ground between the highway and the canyon, the latter being beyond the boundary of the highway, do not create a foreseeable hazard to one using the highway in the exercise of due care. Consequently there is no duty on the part of a county to warn persons using the road of the existence of the canyon located outside the limits of the highway. The canyon is not a hazard that was foreseeable. As a hazard, it is beyond the scope of the deviations from the traveled portion of the road which reasonably can be foreseen by those using the highway in the exercise of ordinary care. The duty to keep roads reasonably safe for ordinary travel does not include liability for those consequences which arise from unusual or extraordinary occurrences. To hold that the county owed a duty to the public to warn against such a hazard as we have before us would in effect make the county an insurer of the traveler's safety. This exceeds the duty imposed upon a county in relation to the construction and maintenance of its highways and the duty it owes to users of the highway. The location of the canyon with reference to the road as herein described was not a hazard reasonably to be foreseen and creates no duty on the part of the county to warn of its existence.

We fail to see how the canyon can have any reasonable relation to the use of the highway by one traveling on it in the exercise of ordinary care.

In testing the sufficiency of evidence to support a verdict it must be considered in the light most favorable to the successful party. Remmenga v. Selk, 150 Neb. 401, 34 N. W. 2d 757. After applying this rule, we conclude that it is insufficient as a matter of law to sustain the judgment. The trial court erred in failing to sustain defendant's motion for a directed verdict. The judgment of the trial court is reversed and the action dismissed.

REVERSED AND DISMISSED.