ELVINA M. MERRITT, ADMINISTRATRIX OF THE ESTATE OF
FERDINAND M. MERRITT, DECEASED, APPELLANT, V. DWIGHT
REED, DOING BUSINESS AS REED HARDWARE, CHADRON,
NEBRASKA, ET AL., APPELLEES.

185 N. W. 2d 261

Filed March 19, 1971. No. 37521.

Charles A. Fisher, for appellant.

Van Steenberg & Winner and Crites & Shaffer, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

WHITE, C. J.

The deceased husband of the plaintiff, a pedestrian, was killed by a collision with a pick-up truck, owned by defendant Reed and being driven by defendant Lenington, while deceased was crossing Bordeaux Street between intersections in the downtown business district of Chadron, Nebraska. The district court submitted the case to the jury on issues of negligence and contributory negligence and the jury returned a verdict for the defendants. Judgment of the district court was entered accordingly. We affirm the judgment of the district court.

The plaintiff assigns 27 overlapping errors, many of which are not discussed and therefore will not be considered. They boil down to an assertion that the district court erred in the submission of the issue of contributory negligence and in the failure to submit other specifications of negligence on the part of the defendant Lenington, beyond that of speed.

Third Street (U. S. Highway No. 20) is a main arterial road running east and west through Chadron, Nebraska. It is intersected by Bordeaux Street, running north and south, which is a paved street about 40 feet wide, in the downtown business section of the City of Chadron. There is a service or filling station on each of the northwest and northeast corners of Third and Bordeaux Streets. There is another filling station on the north side of Third Street a block east of Bordeaux Street. The accident occurred around 9 a.m. on November 8, 1967. The day was clear, the pavement was dry, and the evidence is conclusive that the vision north and south on Bordeaux Street was unobstructed. The pick-up truck approached from the south on Bordeaux Street, crossed the intersection of Third and Bordeaux Streets, and continued north.

The undisputed physical facts and the measurements made by the sheriff establish that the deceased was struck somewhere around 52 feet north of the north crosswalk of Third and Bordeaux Streets and near the

center of Bordeaux Street. By judicial admission the plaintiff admits that it happened 35 to 42 feet north of the north crosswalk. This is corroborated by testimony as to the location of debris surrounding the location of the deceased's body. The deceased's body was carried or hurled a distance off the street after impact to a point approximately opposite the Elks Club entrance on the west side of Bordeaux Street further north. The hat he was wearing was found approximately in the middle of Bordeaux street, 52 feet north of the crosswalk. The one witness who observed the hat immediately after the thud of impact testified that the deceased's hat flew up in the air, and the inference is that it came to rest some place south of the actual point of impact. This would place the point of impact somewhat north of where the hat was found. There were no eyewitnesses to the accident. The deceased never regained consciousness and was dead on arrival at the hospital. The defendant has no memory of the circumstances of the accident which, while unusual, is not uncommon in major accidents. See, 11 Blashfield, Automobile Law and Practice, § 417.2, p. 144, and cases cited thereunder. In light of this situation the resolution of this case must rest upon a proper analysis of the almost undisputed circumstantial evidence in the case, and its relation to the requisite burdens of proof and presumptions involved. Both parties seem to rely upon the presumptions applicable to these situations. However, we are not aided by any presumptions involved here as the same presumption of due care as is presumed for a deceased prevails where the party's version is unavailable due to disability or loss of memory. Where both parties are deceased, are disabled, or lack memory, creating offsetting presumptions of due care, the resolution must rest upon the proper inferences to be drawn from whatever circumstantial evidence is available to the trier of fact. 11 Blashfield, Automobile Law and Practice, § 417.2, p. 144. At the outset, since we are asked to overturn the jury

verdict for defendants, we must consider this case in light of the rule that to justify this court in interfering with the findings of a jury on a fact question, the preponderance of the evidence must be so clearly and obviously contrary to the findings that it is the duty of the reviewing court to correct the mistake. Schmeeckle v. Peterson, 178 Neb. 476, 134 N. W. 2d 37; Beavers v. Christensen, 176 Neb. 162, 125 N. W. 2d 551; Bentley v. Hoagland, 94 Neb. 442, 143 N. W. 465; Fried v. Remington, 5 Neb. 525. In approaching the analysis of the evidence with relation to the sufficiency or lack of evidence in this case, when there is no direct evidence from the lips of the parties involved, we are not required to accept as absolute verity every statement of a witness not contradicted by direct evidence. The persuasiveness of the evidence is destroyed by the physical facts or other circumstantial evidence, even though not contradicted by direct evidence. Snowardt v. City of Kimball, 174 Neb. 294, 117 N. W. 2d 543; Beavers v. Christensen, *supra;* Trumbley v. Moore, 151 Neb. 780, 39 N. W. 2d 613.

The record demonstrates conclusively that the deceased, a pedestrian, was crossing a downtown business street between intersections. The pick-up truck approached on Bordeaux Street from the south on a clear, dry day with the view to the south completely unobscured. The defendant driver had the right-of-way. § 39-751 (5), R. R. S. 1943; Carman v. Hartnett, 161 Neb. 576, 74 N. W. 2d 352; Jarosh v. Van Meter, 171 Neb. 61, 105 N. W. 2d 531, 82 A. L. R. 2d 714; Trumbley v. Moore, *supra.*

This court has been faced in the past with a quite similar situation in Trumbley v. Moore, *supra.* In that case the court was faced with a situation where the plaintiff was an eyewitness and attempted to supply the testimony which would defeat the application of the traditional rules as to right-of-way and lookout and the duty of the pedestrian in this situation. The analysis the court made in that case is obviously applicable to

the case at bar. This court said: "But one who does so (cross between intersections) is charged with the exercise of a greater degree of care than one who crosses a street at a crosswalk where protection is afforded by giving the pedestrian the right-of-way. Doan v. Hoppe, 133 Neb. 767, 277 N. W. 64. While one who crosses a street between *intersections in direct violation of a statute or ordinance is guilty of negligence in so doing, it does not necessarily follow that it is such negligence as would bar a recovery* as a matter of law because it might still be for the jury to determine the extent that his negligence contributed to his injury or whether the driver of the car should have seen him in time to avoid the accident. But one who crosses a street between intersections is required to *keep a constant lookout for his own safety in all directions of anticipated danger.* Where such person crosses the street between intersections without looking at all, or looks straight ahead without glancing to either side, or is in a position where he cannot see and proceeds irrespective of that fact, the situation usually presents a question for the court. Where he looks but does not see an approaching automobile, or sees it and misjudges its speed or its distance from him, or for some other reason concludes that he could avoid injury to himself, a jury question is usually presented. *But the foregoing rule does not mean that a mere statement by the injured person, that he looked in the direction from which he was struck* is sufficient of itself to insure a consideration of his case by a jury. *It must be sufficiently consistent with the circumstances and facts shown by the evidence* to present a question of fact for the jury to decide.

"It is elementary that one who attempts to cross a street between intersections without looking is guilty of such negligence as would bar a recovery as a matter of law. *If he testifies that he did look, it is implied that he looked in such a manner that he would see that which was in plain sight, unless some reasonable excuse*

*for not seeing is shown.* · The decisions of this court have consistently held to this rule. Vandervert v. Robey, 118 Neb. 395, 225 N. W. 36; Bergendahl v. Rabeler, 133 Neb. 699, 276 N. W. 673; Whitaker v. Keogh, 144 Neb. 790, 14 N. W. 2d 596; Simcho v. Omaha & C. B. St. Ry. Co., 150 Neb. 634, 35 N. W. 2d 501." (Emphasis supplied.)

Without passing on the question of whether the plaintiff was entitled to a directed verdict in this situation, it is clear from what we have said in Trumbley v. Moore, *supra,* that the trial court was amply justified in submitting the issue of contributory negligence to the jury.

The trial court submitted only the issue of the speed of the pick-up to the jury. The plaintiff now contends that her specifications of negligence relating to failure to stop at the stop sign on Bordeaux Street, improper lookout, improper control, failure to sound a horn, and other specifications constitute reversible and prejudicial error. In order to examine these contentions it becomes necessary to make a detailed examination of the only evidence upon which such a submission could be based, the testimony of the witness Orville Dau. Dau was a close friend of the deceased, and had been talking with him for some minutes immediately prior to the time of the accident. Dau and a helper were engaged in the excavation and installation of new gasoline pumps at the filling station 1 block to the east, and the exact point where they were working is some 200 to 300 feet east of Bordeaux Street where the accident happened. ··

· Dau said that after their conversation together, deceased proceeded west on the north sidewalk of Third Street toward the filling station and the intersection of Third and Bordeaux Streets. An automobile parked upon the Skelly service station parking lot blocked Dau's view. He said he did not see the deceased from the time his view was blocked by the car until after the thud of impact. He then looked up to see the deceased's hat flying in the air (dropping 52 feet north of the north crosswalk of Bordeaux Street).

He testified that he could not say whether the defendant driver stopped at the stop sign on the south side of Third Street. This witness, after testifying as to the blocking of his vision by the intervening car on the parking lot, also testified that during this period of time he was engaged in a joint lifting and holding operation in the installation work of the pumps, in which his attention had to be focused upon his fellow employee who was underground in the excavation. There was not only a variance in his testimony in the case from that previously given in his statement, but his final summary of his own testimony is so confusing and uncertain as to not reach the point of being sufficient to sustain the plaintiff's burden of proof as to the different factors that are now claimed should have been submitted to the jury. This can only be demonstrated by a recital from the record of his testimony. It is as follows: "Q Now, Mr. Dau, do you remember when you gave a court reporter's statement, that Mr. Widler took down, on the 16th day of November 1967, just, oh, that would be eight days after the accident; do you remember that day? A Yes. Q Okay, and do you remember this question being asked, 'Q Were there any traffic controls at this intersection? A The stop sign. Q Did the vehicle stop at the stop sign? A This I can't answer because *I didn't see it cross the intersection.*' Do you remember giving that answer? A Yes. Q Well, today, now you're saying that you saw it part of the time in the intersection, are you not? A Well, its hard to designate what you—what you mean, 'across the intersection,' you mean midway of Third Street or— Q Well, the intersection is— A After you cross the point of the middle of Third Street, to me it would be beyond the intersection. Q Your testimony today is, that you saw it from the middle of Third Street till it entered or about the time it entered Bordeaux? A Yes, onto Second. Yes, it would be the second block. Q So when you said the other day you didn't see it

when it crossed the intersection, what were you referring to? This November, just eight days after the accident? A Well, maybe I had misinterpreted the way the question was approached to me. Q Well, I—I'm asking you, I'm not trying to—I'm just trying to find out. It seems to me there's a discrepancy, and I want to know what—which is right? A Well, it still *seems* to me that I seen the vehicle, at least from the middle of Third Street, north, is what I recall the pickup seeing it. Q In other— A In other words, it would be the middle of Third Street, north and on, was where I really noticed the pickup. Q But it was *blocked* from your view as it entered Bordeaux Street, by this car that *was parked in the Skelly platform or parking lot?* A *Yes.* Q So it would be only for a period of, according to your testimony today, of maybe 30 feet that you saw the Reed pickup going north? A Yes. Q So the other day when you said you didn't see it cross the intersection, what were you referring to? A In other words, I didn't mean that—I didn't see it when it left—in other words, the south side of Third Street, I didn't see it there at the stop sign, and I didn't probably see it maybe right at the mid of Third Street, but I did see it from then on to the north to the intersection. In other words, it was entering probably close to the crosswalk, I imagine you'd say,— Q Well, you just saw it for an instant, isn't that correct? A Yes, it is. That's what it was, a glance. Q Just like that. (indicating) A It was a glance. Q And the pickup has on it in large letters, or quite large letters, Reed Hardware, doesn't it? A Yes, it does. Q But you didn't see that? You didn't see it long enough to see that? A No, I didn't. That's right. Q And you knew Mr. Lenington quite well at that time, didn't you? A Yes, I did. Q And you didn't see it long enough to recognize him? A No. Q So it really is a guess when you say—try to estimate its speed, is it not? MR. FISHER: That's objected to as incom-

petent, irrelevant and immaterial; improper cross-examination, and argumentative. THE COURT: Overruled. BY MR. VAN STEENBERG: Q You may answer the question. I say, it really is just a guess when you try to estimate the speed, because it was just such an instant? A That's right." (Emphasis supplied.)

This witness further testified at the end of his re-cross-examination as follows: "Q But the point I'm trying to make is, when you saw the hat you were looking almost directly straight west? A Oh, possibly it could have been more to the south, oh, say 20, 30 feet. It's hard to estimate the distance. Q Orville, a little bit ago when I was reading from your statement before, I asked about this question. 'Q Did the vehicle stop at the stop sign?' And you said, 'A This I can't answer because I didn't see it cross the intersection.' Then there was another question, 'Q At the time you saw the vehicle then it was just— A Across the intersection. Q Across the intersection? A From where the sidewalk would be, from then on north, is when I— Q Okay,' Were those questions asked you and those answers given? A Yes."

And further on cross-examination as to foundation for the introduction of speed testimony this witness testified as follows: "Q Mr. Dau, when I visited with you yesterday, you said that this was just a guess, your estimate, did you not? A If you mean on the speed? Q Yes, just a guess. A Yes, it would be a guess. Q And it's still just a guess? A It is to anybody that would guess a vehicle from any moving vehicle, you just— Q Well, what you're about to testify to is a guess, though, is it not? A *Yes.*" (Emphasis supplied.)

It is self-evident that Dau's testimony is contradictory and confused. This arises out of (1) conflict with his previous testimony, and (2) uncertain confusion and contradiction in his testimony on direct, cross, re-direct, and recross-examination. Summarizing, the testimony

of this witness demonstrates that he had no reasonable time, means, distance, or opportunity to formulate a basis for an opinion as to speed, lookout, or the other factors claimed by the plaintiff to be submissible to the jury. Consequently, this testimony lacks sufficient foundation, and even though admitted by the trial court, formulates no basis for submitting to the jury any other issue than speed. Ambrozi v. Fry, 158 Neb. 18, 62 N. W. 2d 259; Tews v. Bamrick & Carroll, 148 Neb. 59, 26 N. W. 2d 499; Fairman v. Cook, 142 Neb. 893, 8 N. W. 2d 315. The plaintiff must meet the requisite burden of proof by some cempetent evidence to sustain it. The testimony as we see it which the plaintiff relies upon is at its best conjecture, speculation, and surmise. As we have said, a mere scintilla of evidence is not enough to require submission to the jury. Langemeier, Inc. v. Pendgraft, 178 Neb. 250, 132 N. W. 2d 880; Lindelow v. Peter Kiewit Sons', Inc., 174 Neb. 1, 115 N. W. 2d 776; Johnsen v. Taylor, 169 Neb. 280, 99 N. W. 2d 254. In the posture of this case there is nothing to justify this court in interfering with the findings of the jury for the defendants because there is no preponderance of the evidence so purely and obviously contrary to the jury's findings that it would be the duty of this court to set aside the verdict. See, Schmeeckle v. Peterson, *supra;* Beavers v. Christensen, *supra.*

There is no direct evidence to sustain the issues of lookout, control, and failure to stop at a stop sign. We have noted there is insufficient foundation for any circumstantial evidence from which we could draw an inference that any of these elements were present. We have recently said that circumstantial evidence is not sufficient in a civil case, unless the circumstances prove or are of such a nature and so related to each other that the conclusion reached by the jury is the only one that can be fairly and reasonably drawn. Popken v. Farmers Mutual Home Ins. Co., 180 Neb. 250, 142 N. W. 2d 309; Bowers v. Maire, 179 Neb. 239, 137 N. W. 2d 796; Petra-

cek v. O.K. Rubber Welders, Inc., 176 Neb. 438, 126 N. W. 2d 466.

There is no evidence to properly submit the issue of failure of the defendant driver to sound a horn. Section 39-774, R. R. S. 1943, is not applicable because the pick-up truck was proceeding in a direct course on the highway. The duty to sound a signal or horn depends upon the circumstances of the particular case. Kauffman v. Fundaburg, 123 Neb. 340, 242 N. W. 2d 658; Tews v. Bamrick & Carroll, *supra*. There is no evidence by which a jury could find that there was a duty to sound a horn or signal because it is pure conjecture and speculation as to when or how the deceased appeared in the line of travel of the defendant driver.

We have examined the other contentions of the plaintiff and they are without merit. The record reveals that this case was carefully tried; that the district court resolved any doubts as to the submission of the issues in favor of the plaintiff; and that the error, if any, was in favor of the plaintiff for which she cannot complain.

The judgment of the district court is correct and is affirmed.

AFFIRMED.