LLOYD C. OLDENBURG, APPELLANT AND CROSS-APPELLEE, V. STATE OF NEBRASKA, DEPARTMENT OF ROADS, APPELLEE AND CROSS-APPELLANT.

374 N.W.2d 341

Filed October 4, 1985.   No. 84-097.

John J. Higgins of Higgins & Okun, and George H. Moyer, Jr., of Moyer & Moyer, for appellant.

Paul L. Douglas, Attorney General, and John R. Thompson, for appellee.

KRIVOSHA, C.J., HASTINGS, CAPORALE, and GRANT, JJ., and MORAN, D.J.

GRANT, J.

This is an appeal from a decision of the district court dismissing an action brought by the plaintiff, Lloyd C. Oldenburg (hereinafter Oldenburg), against the State of Nebraska Department of Roads (hereinafter State), under the State Tort Claims Act, Neb. Rev. Stat. §§ 81-8,209 et seq. (Reissue 1981). Oldenburg has appealed.

At approximately 10 p.m., October 19, 1979, Oldenburg was traveling east in the eastbound lane, or south half, of U.S. Highway 275, approximately 1½ miles west of Norfolk, Nebraska. Highway 275 is a paved, two-lane, undivided highway with unpaved shoulders. At or about milepost 72.40 Oldenburg's car left the hard-surfaced portion of Highway 275 and went onto the south shoulder of the highway. Upon leaving the highway the right front and right rear wheels of Oldenburg's automobile dropped into a rut that was immediately adjacent to the paved portion of the highway. The rut was approximately 75 to 100 feet long, tapered at both ends, and at its deepest point was 6 to 8 inches deep. Because it had rained the previous day, there was some water in it.

In returning to the paved surface of the roadway, Oldenburg quickly turned the wheels of his car sharply to his left, returned to the paved surface, and lost control of his vehicle. As it came off the shoulder, the car traveled in a northeasterly direction across the highway and into the westbound lane of Highway 275, where it struck an oncoming pickup truck almost head on. The area where the collision occurred is open farm country, with no lights.

This collision caused Oldenburg severe and permanent injuries, including a brain concussion and cerebral contusion which resulted in an accumulation of fluid on the brain. He suffered retrograde and posttraumatic amnesia and has no recollection of the events which transpired immediately prior to or at the actual time of the accident.

Oldenburg timely filed a claim with the State Claims Board, which was rejected by the board on March 9, 1982. He then instituted this action in Madison County District Court for injuries sustained as a result of this two-vehicle collision. Trial was had to the district court sitting without a jury, as required

by § 81-8,214, and resulted in a verdict for the State.

The trial court concluded that the State was negligent in the maintenance of the shoulder area immediately adjacent to the paved area of the highway upon which Oldenburg was traveling and that this negligence was a proximate contributing cause of the collision of Oldenburg's automobile with the pickup. The court further concluded that Oldenburg was contributorily negligent in entering into a defective shoulder area that was open and visible, in leaving the paved surface, and in failing to slow his vehicle to such a speed that would allow him to safely return his vehicle to the paved portion of the highway. The court held that Oldenburg's contributory negligence was more than slight and was a proximate contributing cause of the collision of Oldenburg's automobile with the pickup truck. The court further found that by comparison Oldenburg's negligence was more than slight and the State's negligence was less than gross, and by reason thereof the trial court entered judgment for the State. When such findings are made by the trial court in an action under § 81-8,214, those findings of fact have the effect of jury findings under Neb. Rev. Stat. § 25-1151 (Reissue 1979).

In this court Oldenburg sets out several assignments of error, all of which may be consolidated into one. Oldenburg contends the trial court erred by concluding he was guilty of contributory negligence which was more than slight under the circumstances when compared with the negligence of the State. This determination is essentially a question of fact. This court has held on several occasions that the findings of the trial court in an action under the State Tort Claims Act will not be disturbed on appeal unless clearly wrong. *Wakenight v. State*, 212 Neb. 798, 326 N.W.2d 52 (1982); *Shepard v. State of Nebraska*, 214 Neb. 744, 336 N.W.2d 85 (1983). With this in mind we review the record in order to decide if the trial court was clearly wrong in its findings.

There is no question that the State has a duty to maintain its highways and areas adjacent to the highways in a reasonably safe condition. *King v. Douglas County*, 114 Neb. 477, 208 N.W. 120 (1926); *Clouse v. County of Dawson*, 161 Neb. 544, 74 N.W.2d 67 (1955). More specifically, in *Richardson &*

*Gillispie v. State*, 200 Neb. 225, 231, 263 N.W.2d 442, 446 (1978), *supp. op.* 200 Neb. 781, 265 N.W.2d 457, this court stated:

> It is the duty of the State to use reasonable and ordinary care in the construction, maintenance, and repair of the shoulders of a paved or hard-surfaced state highway to keep them reasonably safe for ordinary reasonably anticipated use by a traveler using the highway while in the exercise of due care. The duty to keep highway shoulders safe for ordinary use does not require the State to protect against unusual or extraordinary occurrences.

Once the existence of the State's legal duty to maintain its highway shoulders is established, the question becomes whether the State failed to live up to its duty in this case.

The trial court found that the State knew or should have known of the long rut adjacent to the highway. State Patrol Officer Donald Matejka arrived at the accident scene at 10:30 p.m. At that time it was not raining, nor had it rained the day of October 19, 1979. Other evidence shows that it had rained on October 18 between 2 and 6 p.m. Matejka saw water in the rut, which meant the rain of October 18 had accumulated in the rut, and thus the rut had existed since before the rain of October 18. The evidence supports the trial court's finding that the State knew or should have known of the existence of the rut. Testimony by Thomas McCoy, a maintenance superintendent for the Department of Roads assigned to the Norfolk area, indicated that he was aware of the particular problem associated with the shoulder around milepost 72.40. McCoy acknowledged that Highway 275 curves slightly around milepost 72.40 and that traffic tends to get off the traveled portion of the road, wearing down the south shoulder.

There also was testimony from Robert Holsinger, a registered engineer who has had extensive experience in traffic engineering research. He testified that a rut or dropoff of 75 to 100 feet in length, immediately adjacent to the pavement and extending 6 to 8 inches in depth, would not be in compliance with the maintenance standards promulgated by the Board of Public Roads Classifications and Standards. (The trial court took judicial notice of Neb. Rev. Stat. § 39-2101 (Reissue

1984), which established the Board of Public Roads Classifications and Standards.) He further testified that such a defect would not be in compliance with the maintenance standards of the Department of Roads. Such a condition would create a special hazard to a traveling motorist because if the right side of the vehicle is diverted to the shoulder for whatever reason, the driver, in an attempt to return to the pavement, finds that his wheels form a scrubbing action along the edge of the pavement. A motorist is then confronted with cornering forces which occur because of the steering angle which is made to get the vehicle back on the pavement. The forces of rotation develop so fast that when the rear tire finally comes onto the pavement, the driver cannot react back to the right and would enter the oncoming lane of traffic.

The record indicates, and this court agrees, that the trial court was not clearly wrong in determining that the State had a duty to maintain and repair the shoulder with suitable material to withstand ordinary use, that the State breached its duty, that the State knew or should have known of this condition, that the rut was a proximate and legal cause of Oldenburg's accident, and that as a result of the State's negligence Oldenburg suffered actual injury. This finding, however, only answers half of the question in this case.

The trial court also found that Oldenburg was guilty of contributory negligence and that that negligence was also a proximate cause of the accident. The court found that Oldenburg's negligence was "in entering into a defective area [the shoulder] that was open and visible and in failing to slow his vehicle to such a speed that would allow him to safely return his vehicle to the paved portion of the highway." The trial court does not set out the factual details supporting its determination that Oldenburg was contributorily negligent in driving onto the shoulder. Nor do we find any evidence to support the court's finding in this regard. The determinative fact, however, in finding Oldenburg contributorily negligent is that after his car left the pavement it went upon a dirt shoulder softened by rain and containing a rut which this court found was open and visible. When faced with this problem and the problem of a pickup truck coming toward Oldenburg on its proper side of the

road, Oldenburg immediately turned his car to his left. The dispositive determination is whether this negligence of Oldenburg was more than slight and the State's negligence less than gross so as to bar any recovery by the appellant against the appellee.

The testimony of Officer Matejka in this case indicated that Oldenburg attempted to immediately turn back onto the highway after going onto the shoulder. He further testified that this attempt, made by Oldenburg without first reducing the vehicle's speed, was not good driving practice and was a contributing cause of the accident. Officer Matejka testified the proper approach for reentry onto the pavement would have been to not turn the steering wheel, get a good tight grip, reduce speed, regain control of the car, and slowly come onto the pavement.

Oldenburg argues that he should be insulated by the presumption of due care because neither party involved in the accident is available to testify concerning the accident and because the State has not produced enough evidence to rebut the presumption of due care. In his brief Oldenburg cites *Merritt v. Reed*, 186 Neb. 561, 185 N.W.2d 261 (1971). This case involved a claim by the estate of a deceased pedestrian who was struck by the defendant's automobile. The pedestrian never regained consciousness and died, while the defendant remembered nothing about the accident. In *Merritt*, the court stated at 563, 185 N.W.2d at 263, "Where both parties are deceased, are disabled, or lack memory, creating offsetting presumptions of due care, the resolution must rest upon the proper inferences to be drawn from whatever circumstantial evidence is available to the trier of fact."

The trial court held in effect that the State did present enough evidence to rebut any presumption that Oldenburg exercised due care. There were no eyewitnesses to the accident, but Officer Matejka, testifying as an expert, presented evidence showing that Oldenburg was contributorily negligent. Matejka observed the scuff marks on the vehicle's tires, the mud inside the wheel wells, the glass and metal debris on the highway, and the location of the two vehicles after the collision. From all this he concluded that Oldenburg immediately attempted to swerve

back onto the pavement, lost control of his vehicle, and collided with an oncoming pickup truck. Officer Matejka further testified on redirect examination:

> Q. Did you find any possibility of any evidence that the accident occurred in another manner different than you have testified to in court?
>
> A. No.
>
> Q. Was everything that you observed about the impact and matter you have narrated concerning the events that took place there, was that based on the physical evidence at the scene and your training and experience?
>
> A. That's correct. Yes.
>
> Q. You found no evidence to warrant inferences of the accident happening in some other manner different than what you testified?
>
> . . . .
>
> A. No, I didn't find any other indication.

In *Gerhardt v. McChesney*, 210 Neb. 351, 357, 314 N.W.2d 258, 263 (1982), the Nebraska Supreme Court held:

> "[T]he presumption in an action for wrongful death that a decedent exercised reasonable care for his own safety has no probative force, is a mere rule of law, obtains only in the absence of direct or circumstantial evidence justifying an inference on the subject, and disappears when evidence is produced."

A similar result applies in cases, such as this case, when a party has a lack of memory resulting from the accident.

We conclude that the State did produce sufficient evidence at trial to rebut the presumption of due care set out in *Gerhardt* and that the trial court was not clearly wrong by finding that, by comparison, Oldenburg's negligence in sharply turning from a shoulder while a car was approaching was more than slight and the State's negligence was less than gross. By reason thereof the district court was correct in dismissing the appellant's petition.

In its cross-appeal the State contends that the trial court erred in finding the State negligent. We have disposed of that contention by determining that the evidence supported the trial court's finding that the State was negligent.

The judgment of the district court is affirmed.

AFFIRMED.