DAYTON HENNINGS, APPELLANT, V. SCOTT C. SCHUFELDT AND FARMERS MUTUAL INSURANCE COMPANY OF NEBRASKA, APPELLEES.

384 N.W.2d 274

Filed April 4, 1986.   No. 84-968.

Warren C. Schrempp and Peter J. Hoagland of Schrempp, Hoagland, Gray & Gerdes, for appellant.

Kile W. Johnson of Barlow, Johnson, DeMars & Flodman, for appellee Schufeldt.

Thomas A. Otepka of Gross, Welch, Vinardi, Kauffman & Day, P.C., for appellee Farmers Mutual Insurance Company.

BOSLAUGH, CAPORALE, SHANAHAN, and GRANT, JJ., and BRODKEY, J., Retired.

PER CURIAM.

This case arose out of a motorcycle-pedestrian accident that occurred in Louisville, Nebraska, on April 9, 1983. The plaintiff, Dayton Hennings, was walking across Main Street between intersections when he was struck by a motorcycle operated by the defendant Scott C. Schufeldt. Farmers Mutual Insurance Company of Nebraska was joined as a party defendant because it had issued a policy of insurance to the

plaintiff which provided coverage against uninsured motorists.

At the close of all the evidence the trial court sustained the defendants' motion for a directed verdict. The plaintiff has appealed and claims that the trial court erred in sustaining the defendants' motion for directed verdict.

The accident occurred between 7 and 7:30 p.m. It was dark and misting at the time of the accident. The plaintiff was dressed in dark clothing, but a street light illuminated the accident site fairly well.

On the night of the accident the plaintiff had driven to Louisville to speak with his wife's employer at Schram's Restaurant and Lounge. Schram's is located on the east side of Main Street, about two-thirds of a block south of 2d Street. Main is a two-lane street which runs north and south and is intersected by 2d Street to the north and 3d Street to the south. It is 58 feet wide and has diagonal parking on both sides.

After parking his car on the west side of Main, directly across from Schram's, the plaintiff crossed the street. Following a brief conversation with Thomas Michael Schram, Jr. (Mike Schram), the plaintiff left the sidewalk in front of Schram's, intending to cross the street to his car. The path the plaintiff took was located between intersections and was not a crosswalk. He walked between cars which were diagonally parked on the east side of Main Street in front of Schram's. After he had passed between the cars, he looked both to his left (south) and right (north). He saw no traffic to his left. To his right he saw a small light by the Flower Patch, a florist's shop located over two-thirds of a block to the north, on the northwest corner of 2d Street and Main. He believed the light to be coming toward him. Thinking he had adequate time to cross, the plaintiff proceeded to walk straight west across the street. The plaintiff was nearly 60 years old and had an artificial right leg. He walked with a cane and was said to walk slower than the average person, due to the artificial leg.

The defendant testified that he had not passed the Flower Patch on Main Street but, instead, had turned left onto Main from East 2d Street. He also testified that he did not see the plaintiff until just before the collision and that, at that time, the plaintiff was looking west and down toward the ground a bit,

not at the defendant. In deposition statements the defendant said that at the time of the accident his motorcycle lights were on, he was driving 15 m.p.h. in a 20 m.p.h. zone, and he was looking straight through the windshield, which he later testified had not collected enough rain to obstruct his view.

Neither party was aware of other traffic on the street when the accident occurred. The defendant stated that he was not sure which direction the plaintiff had come from, but he thought he came from the east because the plaintiff was facing west when the collision occurred. He also indicated that because he did not see the plaintiff until just before the collision, he had not had time to brake to avoid the plaintiff. The testimony was uncontradicted that it was commonplace to cross streets between intersections in Louisville.

Somewhere in the southbound lane of Main Street, the plaintiff collided with the fairing near the handlebars on the left front side of the southbound motorcycle driven by the defendant. The plaintiff was spun around by the impact and fell to a sitting position in the street.

At the close of the plaintiff's case, the defendants made a motion for a directed verdict, which was overruled. No further evidence was adduced, and the defendants renewed their motion for a directed verdict. This time the motion was sustained, the court ruling

> that when one moves from the place of safety and could have seen the approaching vehicle in close proximity to him and suddenly moves into the path of the vehicle and he's struck, his own conduct is contributory negligence more than slight, which is a matter of law and precludes his recovery.

The court also noted that it had not originally sustained the motion at the end of the plaintiff's case because, at that point, the evidence had to be treated in the light most favorable to the plaintiff and, as such, was too close to direct the verdict. In considering the renewed motion the court stated that it would consider the evidence as it was, not in the light most favorable to the plaintiff.

This court, when reviewing an order sustaining a motion for directed verdict, will construe all controverted facts and

inferences arising from the evidence in favor of the party against whom the verdict was granted. *Mitchell v. Kesting*, 221 Neb. 506, 378 N.W.2d 188 (1985). Where the facts adduced on an issue are such that reasonable minds can draw but one conclusion, the court must decide the question as a matter of law rather than submit it to the jury for determination. *Poppe v. Petersen,* 221 Neb. 877, 381 N.W.2d 534 (1986).

Although it appears the trial court did not view the evidence in a light most favorable to the plaintiff in directing a verdict, we believe the trial court reached the correct result in directing the verdict for the defendants. "A proper judgment will not be reversed even if the trial court gave the wrong reasons for its rendition." *Kresha v. Kresha*, 220 Neb. 598, 602, 371 N.W.2d 280, 283 (1985).

In the amended petition the plaintiff alleged that the defendant Schufeldt was negligent in the following particulars:

 a. In failing to have his vehicle under reasonable control;

 b. In failing to keep a proper lookout for the plaintiff;

 c. In failing to yield the right of way to the plaintiff;

 d. In operating his vehicle at an excessive rate of speed; that is, a rate of speed that was greater than was reasonable and prudent under the circumstances then and there existing.

In his answer the defendant Schufeldt denied the plaintiff's allegations of negligence and alleged that the plaintiff's own negligence was more than slight and sufficient to bar his recovery from the defendants. In particular, he alleged that the plaintiff was negligent in (1) failing to keep a proper lookout for the vehicle operated by Schufeldt, (2) failing to yield the right-of-way to the vehicle operated by Schufeldt, and (3) failing to cross the street within a designated pedestrian crosswalk.

On direct examination the plaintiff testified that as he got into the street he looked back and forth but was not aware of the motorcycle again until he collided with it. On cross-examination the plaintiff testified that his eyesight and hearing were good on the night of the accident. He admitted that he had neither stopped in the middle of the street to look

nor had he seen the motorcycle headlight again after entering the traveled portion of Main Street. He also conceded to making the statement, in deposition testimony, that once he had checked both left and right from between the parked cars, he had not looked again as he crossed the street.

Several principles have been repeatedly applied in cases involving motor vehicle-pedestrian collisions, where the pedestrian crossed between intersections outside of marked crosswalks. One such principle is that "one who attempts to cross a street at a point between intersections without looking is guilty of such negligence as would bar recovery as a matter of law." *Gerhardt v. McChesney*, 210 Neb. 351, 355, 314 N.W.2d 258, 262 (1982). Another is that a pedestrian crossing between intersections "is required to keep a constant lookout for his or her own safety in all directions of anticipated danger." *Id*. One who fails to keep such a lookout is ordinarily guilty of negligence to such a degree that recovery is barred as a matter of law. *Schutz v. Hunt*, 212 Neb. 228, 322 N.W.2d 414 (1982). The duty imposed by this rule is not that a pedestrian must look one way and continue to do so but that he must "look in the direction or directions of anticipated danger, and . . . continue to be alert to safeguard against injury." *Doan v. Hoppe*, 133 Neb. 767, 772, 277 N.W. 64, 66 (1938).

Further, it has been held that when a pedestrian in a place of safety

> sees or could have seen the approach of a moving vehicle in close proximity to him or her and suddenly moves from the place of safety into the path of such vehicle and is struck, such conduct constitutes contributory negligence more than slight as a matter of law and precludes recovery.

*Gerhardt v. McChesney, supra* at 355-56, 314 N.W.2d at 262; *Hrabik v. Gottsch*, 198 Neb. 86, 251 N.W.2d 672 (1977).

A pedestrian crossing a street between intersections is held to a higher standard of care than one crossing at a crosswalk where the pedestrian is afforded the right-of-way. *Gerhardt v. McChesney, supra*. When crossing a street at a point not within a crosswalk, a pedestrian is required to yield the right-of-way to all vehicles on that roadway. Neb. Rev. Stat. § 39-643(1) (Reissue 1984). It is apparent in the present case that the

plaintiff did not yield the right-of-way to Schufeldt's motorcycle. Violation of the statute, however, is not determinative of the degree of Hennings' negligence, if any. *Jarosh v. Van Meter*, 171 Neb. 61, 105 N.W.2d 531 (1960).

The rule typically applied to determine whether such cases present the issue of contributory negligence as a matter of law or fact is that

> when a pedestrian crosses a street between intersections without looking at all, or looks straight ahead without glancing to either side, or is in a position where he cannot see, and proceeds regardless of that fact, the situation ordinarily presents a question for the court. Where the pedestrian looks but does not see an approaching automobile, or sees it and misjudges its speed or its distance from him, or for some other reason concludes that he could avoid injury to himself, a jury question is usually presented.

*Hrabik v. Gottsch, supra* at 89-90, 251 N.W.2d at 675. But as stated in *Merritt v. Reed*, 186 Neb. 561, 565, 185 N.W.2d 261, 264 (1971), " 'the foregoing rule does not mean that a mere statement by the injured person, that he looked in the direction from which he was struck is sufficient of itself to insure a consideration of his case by a jury. . . .' " (Emphasis omitted.) The statement must be consistent with the facts and circumstances in evidence to present a jury question. *Merritt v. Reed, supra*. For if a pedestrian testified that he looked, " 'it is implied that he looked in such a manner that he would see that which was in plain sight, unless some reasonable excuse for not seeing is shown. . . .' " (Emphasis omitted.) *Id.* at 565-66, 185 N.W.2d at 264.

In the present case it is clear that the plaintiff, even if he did look, failed to see the Schufeldt motorcycle after entering the traveled portion of the street. He also failed to stop at the middle of the street to check for southbound traffic, which, at that point, presented the greatest danger to his safety. It is obvious from the plaintiff's failure to detect the approaching motorcycle, after he had previously seen a light coming toward him from over two-thirds of a block away, that he was not keeping a proper lookout. In addition, there is no reasonable

explanation for the plaintiff's failure to see Schufeldt's motorcycle prior to impact. The evidence is uncontradicted that the motorcycle had its lights on and was traveling in a straight line, below the speed limit, and the street was relatively well lighted, with no other traffic. It can only be concluded that the plaintiff, although perhaps not suddenly, moved from a place of safety into the path of the Schufeldt motorcycle, which the plaintiff would have seen if he had exercised the slightest degree of care.

The plaintiff's conduct was negligence of such a degree that it defeated, as a matter of law, any right of recovery arising from this accident which the plaintiff might otherwise have had against the defendants.

The trial court was correct in directing a verdict in favor of the defendants. The judgment is affirmed.

AFFIRMED.

GRANT, J., dissenting.

I respectfully dissent. In my judgment the recital of facts in the majority opinion shows negligence on the part of both plaintiff and defendant Schufeldt. I do not believe plaintiff's negligence in not properly judging the location, direction, and speed of a "small light way down by the Flower Patch" on a dark, rainy night can be considered, as a matter of law, gross in comparison with the negligence of defendant in never seeing plaintiff at all as plaintiff, using his cane to aid his progress with his artificial right leg, walked across one-half of a 58-foot-wide, unoccupied street. I believe the case should have been submitted to the jury under appropriate instruction as to comparative negligence of plaintiff and defendant.

SHANAHAN, J., joins in this dissent.