GLENN H. SHIPLEY, APPELLANT, V. ALEXANDER A. BAILLIE ET AL., APPELLEES.

547 N.W.2d 711

Filed May 17, 1996. No. S-94-656.

Vicki L. Boone, of Gunderson Law Offices, for appellant.

Gregory G. Barntsen, of Smith Peterson Law Firm, for appellee Federal Kemper Life Assurance Company.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

PER CURIAM.

Glenn H. Shipley filed this action against Alexander A. Baillie, Professional Diversified Services, Inc. (PDS), and Federal Kemper Life Assurance Company (Kemper), seeking an accounting of, and damages for, alleged unpaid commissions for the sales of Kemper insurance policies. The district court granted Kemper's motion for summary judgment and dismissed Shipley's action as against Kemper. Shipley appeals.

Shipley assigns as error: The district court erred in finding that no genuine issue of material fact existed as to Kemper's obligation to Shipley, and in determining that Kemper was entitled to judgment as a matter of law.

PDS was the general agent for Kemper. Pursuant to an agreement with Kemper, PDS was authorized to recruit sub-agents to sell Kemper products. The agreement between Kemper and PDS also authorized PDS to request that commissions be paid directly to the selling agents rather than to PDS. According to Kemper's policies and procedures, direct payment meant making the check payable to the particular agent entitled to the commission, but still sending the check to

the general agent for disbursement. Specifically, the agreement stated:

> You may contract directly with approved Agents or Brokers under agreements suitable for governing solicitation of insurance as authorized by us. In the event you request us to pay commissions earned by your Agents or Brokers directly to them or to provide you with separate checks for the commissions earned by them, then you shall use the printed forms of AGENT'S, BROKER'S, AND SINGLE CASE AGREEMENTS furnished by us. None of these AGREEMENTS shall be in force until we receive notice of your intention to use them and the notice has been acknowledged in writing by an officer of [Kemper].

This agreement between Kemper and PDS stated, in regard to PDS' position, "You shall be deemed to be an independent contractor and nothing contained in this AGREEMENT shall be deemed to make you, your Agents, Brokers or any of your employees an employee of ours."

On August 3, 1990, Shipley, president of GSA, Inc., and Baillie, president of PDS, executed an agreement procuring the services of Shipley and his agents, referred to as the "GSA unit," to sell Kemper life and annuity insurance products. This agreement stated that it was only between PDS and GSA, Inc. The "compensation" section of this agreement stated:

> The level of compensation received by GSA will be determined by a MA26 level Kemper contract executed this day by and between GSA and Kemper, a copy of which is attached and hereby made a part of this agreement. The difference between the agent level and the MA26 level will be the applicable commission percentage that should be paid by Kemper directly to GSA for business issued and paid for by agents in the GSA unit. A copy of the contract is attached and hereby made a part of this agreement.

This agreement was signed by only Shipley and Baillie.

Attached to this agreement was a commission authorization form dated August 1, 1990, in which PDS authorized Kemper to pay commissions directly to members of the GSA unit pur-

suant to a commission schedule. The top of this authorization contained the Kemper insignia. Shipley testified that this commission authorization was the MA26 contract referred to in the PDS/GSA agreement. The authorization provided in pertinent part: "I hereby authorize Federal Kemper Life Assurance Company and or Fidelity Life Association to pay the following Agent(s)/Broker(s) commissions according to the schedule indicated. This agreement can be cancelled by the Company or me by written notice at any time."

Baillie, as a representative of PDS, was the only party to sign the commission authorization form. It was not signed by a Kemper official. Kemper contends that it did not receive this commission authorization until the lawsuit was filed. Kemper, however, acknowledges receiving a fax from GSA in October 1990 containing a list of agents to receive direct commissions but not containing the authorization.

Prior to Shipley's agreement with PDS, Shipley had been a general agent for Kemper for approximately 4 years. Shipley testified in his deposition that he had a general understanding of Kemper's policies and procedures.

Kemper paid commissions to PDS, and some of these commissions were then paid to Shipley and his agents. It is not entirely clear from the record whether the commission checks issued by Kemper were directly made out to Shipley and his agents as payees, or whether the checks were made out to PDS.

Shipley filed a petition against Baillie, PDS, and Kemper seeking an accounting of these commissions and damages. He alleges in his petition that the defendants failed to comply with the terms of the PDS/GSA agreement and the commission authorization form. In his deposition, Shipley testified that he believed that Kemper had paid all commissions to PDS that were due to the GSA unit. Shipley testified, however, that PDS failed to pay Shipley all commissions to which he believed he and his agents were entitled.

Kemper moved for summary judgment. The district court concluded that Kemper had paid all amounts to PDS that might be due to Shipley, and determined that Kemper was not a party to the PDS/GSA contract. The court granted Kemper's

motion for summary judgment and dismissed Shipley's petition as against Kemper.

In regard to this court's standard of review, summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Zion Wheel Baptist Church v. Herzog*, 249 Neb. 352, 543 N.W.2d 445 (1996).

On a motion for summary judgment, the question is not how a factual issue is to be decided, but whether any real issue of material fact exists. *Kocsis v. Harrison*, 249 Neb. 274, 543 N.W.2d 164 (1996).

In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Zion Wheel Baptist Church, supra.*

Shipley contends that Kemper is not entitled to judgment as a matter of law because, as PDS' principal, Kemper is liable for its general agents' actions. Restatement (Second) of Agency § 458 (1958) addresses this issue. Section 458 at 378 provides, in pertinent part: "The authorized employment of a subservant or other subagent does not thereby subject the principal to contractual liability to the subagent . . . ." Comment *a.* to § 458 expands on this principle, stating at 378:

> If an agent employs a subagent, the agent is the employing person, and the principal is not a party to the contract of employment, except where, by express promise or otherwise, he becomes a surety. He is not, therefore, subject to pay the agreed compensation, nor is he subject to contractual liability to indemnify the subagent, to maintain friendly relations with him, or to keep accounts. On the other hand, a subagent has the same rights to indemnity as an agent has [citations omitted] and the same right as agents have against their principals for conduct constituting a tort.

Therefore, according to § 458, a principal that authorizes a general agent to employ subagents is not contractually liable to the subagent under the contract executed between the general agent and the subagent.

The Restatement view, however, runs contrary to the case *Equitable Life Assurance Co. v. Brobst*, 18 Neb. 526, 26 N.W. 204 (1886). *Brobst* involved a subagent selling policies for a general agent of Equitable Life pursuant to an agreement between the general agent and the subagent. The subagent filed an action against Equitable Life to recover for his services rendered for the company. The court, finding that he was entitled to damages from Equitable Life, held: "[T]he acts of a general agent with reference to the subject of the agency will bind his principal, although he may have received private instructions narrowing his authority, unless such instructions are known to the party dealing with him." *Id*. at 528, 26 N.W. at 204.

This court accepts the view as set forth in the Restatement, *supra*, and overrules *Brobst* to the extent it contravenes § 458. Applying § 458, Shipley's action is not based on tort principles, but, instead, on the alleged failure of the defendants to honor the terms of the PDS/GSA contract and commission authorization. The general agent's agreement between Kemper and PDS authorized the employment of subagents. The commission authorization, however, was not signed by any representative of Kemper. Rather, it was signed only by Baillie. Pursuant to § 458, Kemper was not a party to the PDS/GSA agreement or commission authorization form and is not contractually liable to Shipley.

Shipley also contends that summary judgment was improper because a genuine issue of material fact exists as to whether Kemper was a surety, therefore creating an exception to § 458 stated above. He contends that in the case at bar, the positioning and conduct of the parties created an implied suretyship on the part of Kemper and that Kemper was therefore liable to Shipley.

Suretyship is a contractual relation resulting from an agreement whereby one person, the surety, engages to be answerable for the debt, default, or miscarriage of another, the prin-

cipal. *Niklaus v. Phoenix Indemnity Co.*, 166 Neb. 438, 89 N.W.2d 258 (1958). The surety's obligation is not an original and direct one for the performance of his own act, but is accessory or collateral to the obligation contracted by the principal. *Id.* To be binding, a promise to be surety for the performance of a contractual obligation (1) must be in writing, (2) must be signed by the obligor, and (3) must recite a purported consideration. *Spittler v. Nicola*, 239 Neb. 972, 479 N.W.2d 803 (1992).

Shipley does not contend that the commission authorization form was sufficient to create a valid express suretyship on the part of Kemper. Rather, Shipley contends that a suretyship should be implied under the circumstances of this case. He cites 72 C.J.S. *Principal and Surety* § 33 (1987) in support of his implied surety theory. Section 33 at 191 provides in relevant part that

> a suretyship, known as "involuntary suretyship," may arise, without any contract being expressed in positive terms of suretyship, or any actual intent to form that relationship, out of a contract whose chief object is to accomplish some purpose other than that of becoming liable for the debt, default, or miscarriage of another, but which, by implication of law incidentally, has that effect, by reason of the position which the parties have assumed toward each other or toward the property out of which the debt or obligation due to the obligee is paid.

Nebraska case law has never addressed the issue of implied surety. Rather, Shipley urges this court to adopt the theory of implied surety based on the circumstances of this case.

The parties' actions and relationship to each other in this case do not give rise to a suretyship by implication of law. Kemper's actions did indicate that it was acknowledging that it had an obligation for the payment of commissions. This obligation, however, was a direct obligation to PDS rather than a collateral obligation to that of PDS. Kemper fulfilled its obligation through payment to PDS of all commissions due. Moreover, both PDS and Shipley understood Kemper's policy that all payments went to PDS for disbursement to the sub-agents, either in the form of a check to a specific agent or

merely as an unapportioned commission check. Lastly, the commission authorization could be canceled at any time by Kemper or by Baillie upon notice. We decline to apply the doctrine of implied surety to the circumstances of this case.

In sum, no genuine issue of material fact exists as to Kemper's obligation to Shipley. The district court properly granted Kemper's motion for summary judgment, finding no liability on the part of Kemper, and properly dismissed Shipley's petition as against Kemper.

AFFIRMED.

WHITE, C.J., dissenting.

The majority holds that the authorized employment of a subagent by a general agent does not subject the principal to contractual liability to the subagent, overruling *Equitable Life Assurance Co. v. Brobst*, 18 Neb. 526, 26 N.W. 204 (1886). *Brobst* held that "the acts of a general agent with reference to the subject of the agency will bind his principal." *Id.* at 528, 26 N.W. at 204. Since I do not believe that *Brobst* should be so lightly overruled, I respectfully dissent.

Kemper's agreement with PDS provided PDS with the express authority to hire subagents to sell insurance policies for Kemper. Although Kemper has made payments to PDS on commissions due to the subagents, it has not ensured that the subagents receive these commissions from its general agent. Kemper is allowed to reap the benefits of the sales by these subagents without ensuring that these subagents are paid. In sum, Kemper gave its general agent express permission to enter contracts in pursuit of Kemper business opportunities and, therefore, should be held liable for its general agent's breaches of these contracts.

Since the majority's holding provides an insurance company contractual immunity from contracts which directly benefit the company by merely acting through a general agent, I respectfully dissent.

CAPORALE and FAHRNBRUCH, JJ., join in this dissent.