SARAH DUTTON, APPELLANT, V. BEVERLEE J. TRAVIS, APPELLEE.
551 N.W.2d 759

Filed July 30, 1996.   No. A-95-414.

George M. Zeilinger for appellant.

William M. Wroblewski, of Kay & Kay, for appellee.

HANNON, SIEVERS, and MUES, Judges.

MUES, Judge.

Sarah Dutton brought a negligence action against Beverlee J. Travis, seeking damages for personal injuries arising out of an automobile–pedestrian accident. The district court for Chase County granted summary judgment in favor of Travis, finding Dutton contributorily negligent as a matter of law. Dutton appeals from that decision.

## STATEMENT OF FACTS

On May 29, 1992, between approximately 8 and 8:30 a.m. in Imperial, Nebraska, Sarah Dutton left her house, located on the south side of 12th Street, with the intention to cross the street and go to her neighbor's house. Dutton, who was 78 years

old at the time of the accident, was going to visit her neighbor, Terri L. Commins, so that Commins could read to Dutton an entry in an address book which Dutton could not read.

Dutton testified in her deposition that when she came to her mailbox, located on the edge of her lawn next to 12th Street, she stopped and looked left (west) and right (east) along 12th Street, did not see any traffic, and proceeded to cross the street. Dutton stated that the weather was nice, the sun was shining, and there were no obstacles blocking her view of the road. Dutton stated that her mailbox is located approximately half a block from the intersection of 12th and Park Streets. According to Dutton, although she wore glasses, her eyesight was good, and she had problems only with close reading.

Shortly after Dutton entered the street, she was struck by an automobile driven by Beverlee J. Travis. Travis testified in her deposition that just before the collision she had left the Colonial Kitchen parking lot located approximately two blocks (apparently west) from Dutton's house and was driving east on 12th Street. When Travis first saw Dutton, Travis' vehicle either was in the middle of the first intersection west of the block in which Dutton lives or was just entering into that block, and Dutton was standing beside her mailbox. Travis assumed that Dutton was mailing something. Travis also assumed that Dutton would not be crossing the street by herself, because Travis knew Dutton and was aware that Dutton did not have good eyesight. Specifically, Travis testified that she was aware that Dutton had poor eyesight because of a previous incident where it had been necessary for Travis to actually take Dutton's hand and tell Dutton who she was before Dutton was able to recognize her.

Travis testified that after observing Dutton by her mailbox, Travis looked into her rearview mirror "for a second," and when she looked back at the road, Dutton was directly in front of her car by the hood ornament, approximately in the middle of Travis' lane of traffic. Travis, who stated she was traveling approximately 10 to 15 m.p.h., then swerved to the left and hit her brakes. The bumper on the passenger side of Travis' car hit Dutton's left side, forcing Dutton onto the hood of the car and then against the windshield and back to the ground. Travis' vehicle stopped east of Dutton's mailbox.

As a result of the accident, Dutton's left leg was broken. Dutton does not recall anything about the accident. Travis stated that had Dutton been a small child, "I probably never would have taken my eyes off of [her]." Travis also stated that there was nothing obstructing her view.

In an affidavit, Dutton's neighbor, Commins, stated that on the morning of May 29, 1992, after receiving a telephone call from Dutton advising Commins that she was coming over to Commins' house, she looked out her living room window and saw Dutton by the mailbox. After looking down to clear clothing and papers from her couch, Commins again looked toward 12th Street and saw Dutton rolling off of Travis' car. Dannie Mickelson, an insurance adjuster who investigated the accident, stated in an affidavit that the distance from the Colonial Kitchen parking lot to Dutton's mailbox was 446 feet. From the mailbox to the intersection to the east was 75 feet.

On October 6, 1994, Dutton filed a petition in the district court for Chase County alleging that Travis' negligence had been the direct and proximate cause of injuries to Dutton. Travis filed an answer denying the allegations in Dutton's petition and asserting that Dutton's own negligence was the direct and proximate cause of her injuries. Further, Travis alleged that if she was negligent, Dutton was contributorily negligent to such an extent as to bar her recovery as a matter of law. Travis then filed a motion for summary judgment on February 22, 1995.

A hearing on the motion for summary judgment was held on March 10, 1995, at which the court received the depositions of Dutton and Travis and the affidavits of Commins and Mickelson. In an order dated March 22, 1995, the district court found that there were no material questions of fact. Further, the court found that Dutton was contributorily negligent and that Dutton's negligence was more than slight and equal to or greater than the negligence of Travis. Accordingly, the court granted Travis' motion for summary judgment. Dutton timely appeals from this order.

## ASSIGNMENTS OF ERROR

On appeal, Dutton asserts that the district court erred in determining that Dutton's negligence was equal to or greater

than Travis' negligence and in granting Travis' motion for summary judgment.

## STANDARD OF REVIEW

■ Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Shipley v. Baillie*, 250 Neb. 88, 547 N.W.2d 711 (1996); *Schiffern v. Niobrara Valley Electric*, 250 Neb. 1, 547 N.W.2d 478 (1996).

■ In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Shipley v. Baillie, supra.*

## ANALYSIS

Dutton argues that the district court erred in finding that she was contributorily negligent as a matter of law so as to bar her from recovery. The law in Nebraska on contributory negligence has changed in recent years. Under the present law, in any action accruing after February 8, 1992, a plaintiff's contributory negligence "diminish[es] proportionately the amount awarded as damages for an injury attributable to the claimant's contributory negligence," but does not bar recovery unless the plaintiff's contributory negligence is equal to or greater than the defendant's. Neb. Rev. Stat. § 25-21,185.09 (Reissue 1995). This modified comparative negligence statute, with its equal–fault bar, replaces the previous standard, under which a plaintiff would be barred from recovery as a matter of law if his or her contributory negligence was more than slight or the defendant's negligence was less than gross in comparison. Neb. Rev. Stat. § 25-21,185 (Reissue 1995).

Under the former standard,

> to obtain summary judgment on the issue of contributory negligence, the defendant has the burden of proving, under the facts viewed most favorably to the plaintiff, that (1) the plaintiff's contributory negligence was more than slight as

a matter of law or (2) the defendant's negligence was not gross in comparison to the plaintiff's negligence as a matter of law. *John v. ∞ (Infinity) S Development Co.*, 234 Neb. 190, 450 N.W.2d 199 (1990).

*Schiffern v. Niobrara Valley Electric*, 250 Neb. at 7-8, 547 N.W.2d at 483.

■ Under the current standard, to obtain summary judgment on the issue of contributory negligence, the defendant has the burden to prove, under the facts viewed most favorably to the plaintiff, that the contributory negligence of the plaintiff is equal to or greater than the negligence of the defendant as a matter of law. § 25-21,185.09.

Neither party adduced evidence on matters which one might reasonably expect in such a case, such as the width of 12th Street at the point in question, the number of lanes it contained, the distance from Travis' car to Dutton at the time Travis first observed her, the presence or absence of skid marks at the accident scene, the distance east of the mailbox that Travis' vehicle came to rest following the collision, the direction Dutton was facing (south toward her mailbox or north toward 12th Street) when Travis first observed her, or the posted speed limits, if any, on 12th Street. Nevertheless, the evidence offered shows that Dutton crossed 12th Street between intersections, and a reasonable inference is that no crosswalk existed at this point on 12th Street. She testified that she looked both ways, but failed to see any traffic, despite the lack of any obstacle blocking her view.

■ Several principles have been articulated with respect to motor vehicle–pedestrian collisions under the previous slight/gross standard. For example, the Nebraska Supreme Court has held that when a pedestrian in a place of safety

"sees or could have seen the approach of a moving vehicle in close proximity to him or her and suddenly moves from the place of safety into the path of such vehicle and is struck, such conduct constitutes contributory negligence more than slight as a matter of law and precludes recovery."

*Hennings v. Schufeldt*, 222 Neb. 416, 421, 384 N.W.2d 274, 278 (1986) (quoting *Gerhardt v. McChesney*, 210 Neb. 351, 314

N.W.2d 258 (1982)). See, also, Neb. Rev. Stat. § 60-6,153(2) (Reissue 1993) (no pedestrian shall suddenly leave curb or other place of safety and walk into path of vehicle which is so close that it is impossible for driver to stop). Also, a pedestrian crossing a street between intersections is held to a higher standard of care than one crossing at a crosswalk where the pedestrian is afforded the right-of-way. *Hennings v. Schufeldt, supra*; *Gerhardt v. McChesney, supra*. When crossing a street at a point not within a crosswalk, a pedestrian is required to yield the right-of-way to all vehicles on that roadway. Neb. Rev. Stat. 60-6,154(1) (Reissue 1993).

In addition, the court has held that a pedestrian who crosses a street between intersections is required to keep a constant lookout for his or her own safety in all directions of anticipated danger. See, e.g., *Hennings v. Schufeldt, supra*; *Gerhardt v. McChesney, supra*; *Hrabik v. Gottsch*, 198 Neb. 86, 251 N.W.2d 672 (1977). Under the previous slight/gross standard, a plaintiff who failed to keep such a lookout was ordinarily guilty of negligence to such a degree that recovery was barred as a matter of law. *Hennings v. Schufeldt, supra*.

Dutton's testimony is that she looked both ways before crossing the street. She did not see Travis' vehicle, although there were no obstructions in her line of sight, and no reasonable explanation for Dutton's failure to see Travis is given. Travis' speed was 10 to 15 m.p.h., the weather was "nice," and the sun was shining. Where a pedestrian looks but does not see an approaching automobile, or sees it and misjudges its speed or its distance from him or her, or for some reason concludes that he or she could avoid injury to himself or herself, a jury question is usually presented. *Hennings v. Schufeldt, supra*. However, as stated in *Hennings*: " ' "[T]he foregoing rule does not mean that a mere statement by the injured person, that he looked in the direction from which he was struck is sufficient of itself to insure a consideration of his case by a jury. . . ." ' " 222 Neb. at 422, 384 N.W.2d at 278 (quoting from *Merritt v. Reed*, 186 Neb. 561, 185 N.W.2d 261 (1971)). Even if a plaintiff testified that he or she did look before crossing the street, it is implied that the plaintiff looked in such a manner that he or she would see that which was in

plain sight unless some reasonable excuse for not seeing was shown. *Hennings v. Schufeldt, supra*; *Merritt v. Reed, supra*; *Trumbley v. Moore*, 151 Neb. 780, 39 N.W.2d 613 (1949). Based on the foregoing authority, it appears that Dutton's actions likely constituted contributory negligence as a matter of law under the slight/gross standard. A threshold question is whether the same result obtains under Nebraska's "modified" comparative negligence law. We conclude that it does not.

As stated previously, under the new standard, a plaintiff is not barred from recovery unless the plaintiff's share of negligence is equal to or greater than the defendant's. Under the slight/gross standard, a plaintiff was barred from recovery as a matter of law if his or her contributory negligence was more than slight. See *Schiffern v. Niobrara Valley Electric*, 250 Neb. 1, 547 N.W.2d 478 (1996). The Nebraska Supreme Court has held that the slight/gross standard does not contemplate translating negligence into a mathematical ratio and that such a rule would not further the administration of justice. See, *Hausse v. Kimmey*, 247 Neb. 23, 524 N.W.2d 567 (1994); *Stack v. Sobczak*, 243 Neb. 78, 497 N.W.2d 374 (1993) (White, J., dissenting); *Nickal v. Phinney*, 207 Neb. 281, 298 N.W.2d 360 (1980); *Burney v. Ehlers*, 185 Neb. 51, 173 N.W.2d 398 (1970). Moreover, it has refused to adopt a rule that contributory negligence of more than a certain percentage will bar recovery as a matter of law. *Stack v. Sobczak, supra* (citing *Nickal v. Phinney, supra*). Nevertheless, the Supreme Court has determined that where a jury's special verdict reduced a plaintiff's damages for the plaintiff's contributory negligence by 40 percent, it was "self-evident" that the jury had found the plaintiff to have been guilty of more than slight negligence, which defeated the plaintiff's right of recovery. *Stack v. Sobczak, supra*. See also, *Guerin v. Forburger*, 161 Neb. 824, 74 N.W.2d 870 (1956) (reduction of 45 percent of plaintiff's recovery by jury showed that plaintiff was more than slightly negligent).

Preexisting Nebraska law was that a plaintiff who was more than slightly negligent could recover nothing. While the former slight/gross statute did not contemplate translating negligence into a mathematical ratio, *Stack* and *Guerin* suggest that a

plaintiff's negligence of 40 percent or greater of the total negligence constitutes negligence more than slight as a matter of law and defeats any recovery. Under Nebraska's revised law, a plaintiff is not barred from recovery unless his or her negligence is equal to or greater than the negligence of the defendant. § 25-21,185.09. Thus, under the new law, a plaintiff can recover even if his or her percentage share of negligence is 49 percent. Therefore, the determination that a plaintiff's negligence was more than slight as a matter of law under the slight/gross standard does not automatically translate into a finding that the same plaintiff's right to recovery would be barred under § 25-21,185.09. The rules have changed. Precedent under the old standard is not dispositive.

To uphold the district court's grant of summary judgment would require a finding that the evidence viewed in a light most favorable to Dutton creates no genuine issue of material fact and that such evidence compels a finding that Dutton's negligence was at least equal to the negligence of Travis as a matter of law. We cannot so find.

In this instance, viewing the evidence in a light most favorable to Dutton, the record shows that Dutton was standing on the roadway in front of her mailbox when Travis first observed her. Travis testified that she assumed Dutton was located where she was in order to place whatever was in her hands in the mailbox and that she did not anticipate that Dutton would cross the street by herself, because Travis was aware of how bad Dutton's eyesight was. Travis then looked away from the roadway and into her rearview mirror for an unspecified amount of time, and when she looked up, Dutton was in the middle of Travis' lane of traffic, directly in front of Travis' hood ornament. While there is no direct evidence as to the length of the block in question, construing the evidence most favorably to Dutton, the mailbox was located approximately in the middle of the block, and Travis testified that she first saw Dutton when Travis' vehicle was in the intersection west of the block in which Dutton's mailbox was located or just entering the block. Travis knew that Dutton's eyesight was "real bad." Travis then glanced away from the roadway and into her rearview mirror. She next looked ahead and observed Dutton directly in front of

her car, swerved, and applied her brakes. Her vehicle came to rest an undetermined distance east of the mailbox, the point at which Dutton crossed 12th Street.

■ Travis correctly posits the maxim that between intersections, an automobile has the right–of–way over pedestrians, and the driver of an automobile has the right to assume that pedestrians will observe this rule. The driver is not required to anticipate that a pedestrian will violate this rule. *Jarosh v. Van Meter*, 171 Neb. 61, 105 N.W.2d 531 (1960). Nevertheless, Neb. Rev. Stat. § 60–6,109 (Reissue 1993) provides:

> Notwithstanding the other provisions of the Nebraska Rules of the Road, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give an audible signal when necessary and shall exercise proper precaution upon observing any child or obviously confused or incapacitated person upon a roadway.

The foregoing statute implicitly recognizes that a higher duty devolves upon a driver observing a pedestrian who is prone to act in an unpredictable manner due to immaturity, confusion, or incapacity. That Travis was personally familiar with Dutton's age and poor eyesight is without dispute. That Travis observed her at the mailbox is undisputed. While the evidence is unclear as to exactly where Dutton was when Travis first observed her, the reasonable inference is that she was on the edge of the roadway, off of the curb, but not yet in Travis' lane of travel. For Travis to then look away from Dutton and not look back again until just immediately before the impact, which occurred at a point approximately one–half block later, is clearly evidence of negligence, at least in the context of a motion for summary judgment. Travis' statement that had Dutton been a small child, she probably never would have taken her eyes off her, is telling. Travis' personal knowledge of Dutton's age and eyesight compelled Travis to take "proper precaution" under § 60–6,109. By looking away for a period sufficient for the car to travel the distance it did, Travis failed to maintain a proper lookout and to exercise due care under § 60–6,109. See, e.g., *State v. Mattan*, 207 Neb. 679, 300 N.W.2d 810 (1981). At least

this is certainly so when we view the evidence most favorably to Dutton, as we must do.

The evidence presented at the summary judgment hearing leaves unsettled issues of fact material to determining the negligence of the parties and their respective percentages of negligence. Thus, there are genuine issues of material fact and the inferences to be drawn from the facts as to whether Dutton's negligence barred her recovery as a matter of law.

## CONCLUSION

Although the evidence shows that Dutton attempted to cross a roadway between intersections without properly yielding to oncoming traffic, the evidence also shows that Travis failed to keep a proper lookout and thus failed to exercise due care upon observing Dutton next to the road. In viewing the evidence in a light most favorable to Dutton, we find that there is a genuine issue of material fact as to whether Dutton's negligence was equal to or greater than the negligence of Travis under Nebraska's comparative negligence law. We therefore find that the district court erred in granting summary judgment in favor of Travis, and we reverse, and remand for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.