SANDY L. FIDLER, APPELLANT, V. ANN M. KOSTER AND
THE MADONNA SCHOOL, APPELLEES.

603 N.W.2d 165

Filed December 14, 1999.    No. A-98-1065.

Christopher D. Jerram and Jeffery R. Kirkpatrick, of Kelley, Lehan & Hall, P.C., for appellant.

Joseph K. Meusey and Danene J. Tushar, of Fraser, Stryker, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., for appellees.

HANNON, MUES, and INBODY, Judges.

HANNON, Judge.

## INTRODUCTION

A pedestrian sued a driver of a vehicle and the driver's employer for negligence after the pedestrian was struck by the driver's vehicle as she crossed the street without using a crosswalk. At the close of all the evidence, the trial court granted a directed verdict in favor of the driver and her employer, reasoning that the pedestrian had not provided sufficient evidence of proximate cause to submit her claim to the jury, based on the fact that experts for both sides agreed that the driver could not have avoided the accident in the time it took the pedestrian to step into the street and move to the point of impact. The pedestrian appeals, inter alia, the directed verdict, arguing that the driver should have observed the pedestrian sooner and did not act reasonably, in comparison to the busdriver in the next lane who stopped the bus prior to the point of impact. We affirm the trial court's holding and find that the pedestrian failed to present any evidence of the driver's negligence as the proximate cause of the accident and that therefore the driver and her employer were entitled to a judgment as a matter of law.

## SUMMARY OF EVIDENCE

This case arose from a vehicle-pedestrian accident occurring in Omaha, Nebraska, on March 28, 1996, at approximately 9:12 a.m. The case came to trial on September 21, 1998. The accident occurred on Maple Street, a four-lane road running east and west. The two northernmost lanes carry traffic traveling west, and the two southernmost lanes carry traffic traveling east. Seventy-second and 73d Streets run north and south and cross Maple Street. The accident occurred between the intersections with 72d and 73d Streets and Maple Street, with 72d Street to the east and 73d Street to the west of the point of impact. Maple Street slopes downward slightly to the west, and the speed limit is 40 m.p.h.

On the morning of the accident, Sandy L. Fidler was on the north side of Maple Street waiting to cross to the bus stop on the other side of the street. Fidler stood approximately 2 feet from

the curb on the north side of the street and at a point approximately 380 to 400 feet west of the intersection of Maple and 72d Streets. Both Ann M. Koster and Julianna Leighton were traveling west on Maple Street that same day. Leighton was driving a schoolbus in the right-hand lane, and Koster was driving a Chevy Cavalier in the left-hand lane, while in the scope and course of her employment for The Madonna School.

Both the bus and the car were traveling approximately 35 to 40 m.p.h. as they approached the intersection with 72d Street. The front of Koster's car was at approximately the midpoint of the bus as the two vehicles moved through the intersection. Leighton testified that while proceeding through the intersection, she observed Fidler standing near the curb ahead. Fidler was looking east up Maple at the approaching traffic. At this point, Leighton began to slow down to approximately 30 m.p.h., in part because Maple was a narrow street and Leighton worried about hitting Fidler with the mirrors on the bus, and in part because she thought Fidler might try to cross the street in front of her. Leighton testified at trial that she had come to always expect everyone to cross in front of her bus.

Koster testified that she did not observe Fidler on the side of the street as Koster's car moved through the intersection, even though the evidence showed that Koster had a clear line of sight to Fidler's position. As the bus began to brake slowly and reduce speed, Koster's car moved ahead of the bus. Koster testified that she looked down at her dashboard for a second and that when she looked up, Fidler was hurrying across the street and was just ahead of Koster's car and a couple of feet from entering her lane. Fidler proceeded into Koster's lane and was struck by the right front bumper of the car, throwing her into the windshield and then back onto the street. Fidler had not crossed in a crosswalk. Koster braked at approximately the time of impact. Koster testified that she saw Fidler for the first time when Fidler was just a few feet from her car. Leighton, who saw the impact just ahead of her in the other lane, pulled the airbrakes on the bus to stop as well.

Both Fidler's and Koster's experts agreed on the measurements, speeds, and distances of the accident. According to both experts, Fidler took approximately 1.97 seconds to step off the

curb and cross to the point of impact. Both experts also agreed that if Koster had been going 35 or 40 m.p.h., as the evidence indicated, she would have been 101 to 116 feet from the point of impact the moment Fidler stepped off the curb. Further, both experts agreed that Koster could not have done anything in the 1.97 seconds to avoid hitting Fidler at these distances and speeds.

At the close of all the evidence, Koster and The Madonna School renewed their motion to dismiss and their motion for a directed verdict. The trial court granted their motion for a directed verdict, reasoning that the expert testimony showed that any alleged negligence on Koster's part could not have been the proximate cause of Fidler's injuries. Fidler now appeals.

## ASSIGNMENT OF ERROR

Fidler alleges, inter alia, that the trial court erred in granting the motion for directed verdict at the close of the evidence at trial. We do not address Fidler's other assignments of error because our ruling on this assignment renders the other assignments moot.

## STANDARD OF REVIEW

A directed verdict is proper at the close of all the evidence only where reasonable minds cannot differ and can draw but one conclusion from the evidence, that is to say, where an issue should be decided as a matter of law. . . . The party against whom a verdict is directed is entitled to have every controverted fact resolved in his or her favor and to have the benefit of every inference which can reasonably be drawn from the evidence. If there is any evidence which will sustain a finding for the party against whom the motion is made, the case may not be decided as a matter of law.

(Citations omitted.) *Martin v. Roth*, 252 Neb. 969, 972-73, 568 N.W.2d 553, 555-56 (1997).

## ANALYSIS

Fidler argues that the trial court improperly directed the verdict in Koster's favor because material questions of fact remained that the jury should have decided. Specifically, Fidler

argues that the jury could have determined Koster was negligent by not observing Fidler sooner and by not acting similarly to Leighton, who was driving under the same conditions as Koster and yet avoided hitting Fidler.

"In order to maintain a negligence action, a plaintiff must prove duty, breach, proximate cause, and damages." *Divis v. Clarklift of Nebraska*, 256 Neb. 384, 392, 590 N.W.2d 696, 701 (1999).

> A "proximate cause" is that which, in a natural and continuous sequence, without any efficient intervening cause, produces the injury, and without which the injury would not have occurred. . . . In other words, there must be " 'some reasonable connection' " between the wrongful act of the defendant and the damage suffered by the plaintiff.

(Citations omitted.) *Zimmerman v. FirstTier Bank*, 255 Neb. 410, 423, 585 N.W.2d 445, 454 (1998). " 'In a negligence case, a trial court should sustain a motion for directed verdict or for judgment notwithstanding the verdict only when the evidence, viewed in the light most favorable to the party against whom the motion is directed, fails to establish actionable negligence.' " *McWhirt v. Heavey*, 250 Neb. 536, 548-49, 550 N.W.2d 327, 335 (1996).

Upon Koster's renewed motion for a directed verdict, the trial court had before it the question of whether Fidler had presented sufficient facts on each and every element of her claim to submit a question of fact—Koster's negligence—to the jury. The experts for both parties agreed that if Koster had seen Fidler step off the curb and had reacted at that very instant, she would not have been able to avoid hitting Fidler at either 35 or 40 m.p.h. Once Fidler committed to entering the roadway, she gave Koster only 1.97 seconds to react, which both experts acknowledged was not enough time to avoid the accident under human response time in those circumstances.

Assuming arguendo that Koster was negligent in not seeing Fidler step from the curb, this could not have been the proximate cause of the accident on the evidence presented. The facts in evidence show that even if Koster had seen Fidler step from the curb, she could not have avoided the accident. Because such a showing is necessary for a plaintiff to prove a claim which

could go to the jury, the trial court properly directed the verdict as a matter of law. All of the evidence available at the close of the trial could lead to only one reasonable conclusion: Fidler had not presented facts that any negligence on Koster's part was the proximate cause of her injuries.

Fidler argues that Koster should have seen Fidler approximately 380 to 400 feet before impact. The evidence was undisputed that Fidler, while standing on the curb, was in Koster's range of vision as Koster moved through the 72d Street intersection with Maple Street while alongside the bus. It was at this point that Leighton observed Fidler standing on the curb and began to brake.

Before crossing, Fidler stood on the curb and looked at the approaching traffic. Neb. Rev. Stat. § 60-6,154(1) (Reissue 1998) requires that "[e]very pedestrian who crosses a roadway at any point other than within a marked crosswalk, or within an unmarked crosswalk at an intersection, shall yield the right-of-way to all vehicles upon the roadway." Further, Neb. Rev. Stat. § 60-6,153(2) (Reissue 1998) states that "[n]o pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to stop."

At 380 to 400 feet, Koster owed no duty to keep a proper lookout for Fidler or to slow or stop for her in this case. The evidence indicated that Fidler only stood on the curb and looked toward the oncoming traffic. At this point, she was no different from the many pedestrians who cross Nebraska streets every day. In *McFarland v. King*, 216 Neb. 92, 95, 341 N.W.2d 920, 923 (1983), the Nebraska Supreme Court stated:

> " 'A vehicle traveling on a highway at a reasonable and lawful rate of speed is not required to slow down or stop upon the appearance of a vehicle about to enter the highway from a private road until it reasonably appears that its driver is not going to yield the right-of-way.' "

*McFarland* affirmed a summary judgment in favor of the defendant driver because the plaintiff—a boy on a bicycle—had entered the road without stopping or yielding the right-of-way and struck the side of the defendant's vehicle. Even though the defendant had not seen the boy until the bicycle was only 4 feet

from the defendant's truck, *McFarland* found that the boy's failure to look and yield, rather than any wrongdoing by the defendant, was the proximate cause of the boy's injuries.

We believe that a driver is similarly not obligated to slow down or stop simply by the appearance of a pedestrian on the side of the road waiting for an opportunity to cross. See *Ybarra v. Wassenmiller*, 206 Neb. 164, 168, 291 N.W.2d 725, 728 (1980) ("[a] pedestrian has equal rights with the operator of a vehicle in the use of a private way used by members of the public and each must use reasonable care for his own safety and the safety of others"). The duty to slow down or stop for a pedestrian, like a vehicle entering the road, does not attach until it reasonably appears that the pedestrian will not yield the right-of-way. Accordingly, Koster had no duty to avoid any potential collision until it reasonably appeared that Fidler was not going to yield the right-of-way to the oncoming traffic. That moment occurred when Fidler stepped from the curb. Before that moment, the evidence was undisputed that Fidler only appeared as a pedestrian waiting for an opportunity to cross. To hold otherwise would create an unreasonable legal duty which would hinder the natural and reasonable flow of traffic.

Fidler argues that her actions while standing on the curb and looking for an opportunity to cross presented a question of fact for the jury—that is, whether it reasonably appeared that she was not going to yield the right-of-way. A driver has the right to assume that other vehicles and pedestrians will exercise reasonable care until evidence to the contrary is reasonably apparent. See, *Vacanti v. Montes*, 180 Neb. 232, 142 N.W.2d 318 (1966); *Zoucha v. Northwestern Bell Tel. Co.*, 176 Neb. 408, 126 N.W.2d 220 (1964). At the distance at which Fidler argues Koster should have seen and reacted to Fidler, the evidence shows that Fidler gave no indication that she would not yield the right-of-way to the oncoming traffic.

We briefly note that *Dutton v. Travis*, 4 Neb. App. 875, 551 N.W.2d 759 (1996), also involving a vehicle-pedestrian accident, is distinguished from the present case in that in *Dutton*, we addressed an issue of comparative negligence between the parties, whereas here, the issue is a lack of proximate cause evident from undisputed facts at trial. Further, the defendant driver in

*Dutton* actually observed the plaintiff pedestrian on the side of the road and had specific knowledge of the plaintiff's physical limitations, and yet the defendant looked away at a critical time before impact.

Fidler also argues that Koster's negligence was evidenced by the fact that Leighton, while driving the schoolbus in the lane next to Koster's, drove under the same circumstances as Koster and yet avoided hitting Fidler. Fidler also asserts that Leighton's testimony is evidence that Fidler's actions gave a reasonable appearance that she was not going to yield the right-of-way. We note two fatal flaws in Fidler's argument. First, negligence is measured by what a reasonably prudent person would do in similar circumstances. See *Tapp v. Blackmore Ranch*, 254 Neb. 40, 575 N.W.2d 341 (1998). While the acts of an individual might be evidence on what is or is not reasonable, negligence is not measured by the conduct of a specific individual. Simply because Leighton avoided hitting Fidler does not infer that Koster was negligent in doing so in the next lane.

The second flaw in Fidler's reliance on Leighton's conduct to establish Koster's negligence stems from a material difference between Leighton's and Koster's situations. Leighton testified that she slowed down when she first observed Fidler in part because she was worried that the mirrors on the side of the bus could potentially strike Fidler as she stood on the curb while the bus passed. In this situation, Leighton owed a duty of care to Fidler that did not apply to Koster's car in the next lane. While Leighton may have appropriately slowed down when she observed Fidler some 400 feet away, Koster was under no such duty at that point.

Leighton also testified that she believed Fidler was going to cross the street and that Leighton herself had come to expect that everyone was going to cross in front of her. Fidler argues that this approach exemplifies what was reasonable in this case. However, Leighton's assumption contradicts the rule cited above that a driver may assume that others will also act reasonably until evidence to the contrary appears. Accordingly, the fact that Leighton avoided hitting Fidler by slowing earlier than Koster does not present a jury question which overcomes the

trial court's grant of a directed verdict in favor of Koster and The Madonna School.

## CONCLUSION

For the reasons expressed above, we affirm the trial court's decision to grant a directed verdict in favor of Koster and The Madonna School.

AFFIRMED.