PATRICK G. BEAN, APPELLANT, V. STATE OF NEBRASKA, APPELLEE.

382 N.W.2d 360

Filed March 7, 1986.   No. 84-645.

Donald R. Witt of Baylor, Evnen, Curtiss, Grimit & Witt, for appellant.

Robert M. Spire, Attorney General, and John R. Thompson, for appellee.

KRIVOSHA, C.J., HASTINGS, CAPORALE, and GRANT, JJ., and BUCKLEY, D.J.

CAPORALE, J.

Plaintiff, Patrick G. Bean, appeals from the dismissal of his action brought pursuant to the provisions of the State Tort Claims Act, Neb. Rev. Stat. §§ 81-8,209 et seq. (Reissue 1981), against the defendant, State of Nebraska. He assigns as error, in summary, (1) the rejection of certain evidence claimed to bear on the State's negligence and (2) the finding that the State was not negligent. We affirm.

During the dark hours of November 11, 1977, at approximately 8:30 p.m., plaintiff was riding as a passenger in a pickup truck driven by his brother, Michael, in a westerly direction on Nebraska Highway 4. The driver failed to negotiate the sharp, 92° right turn at the junction of Highway 4 and combined U.S. Highways 6 and 34 near Oxford. As a result, the pickup truck rolled over one and a half times, causing injuries which rendered the plaintiff a quadriparetic.

The evidence discloses that at a point 3,705 feet from the junction of the highways, a westbound driver on Highway 4 encounters a railroad crossing sign, the crossing itself being 2,826 feet from the junction. Such a driver next encounters a junction sign placed 2,362 feet from the junction, followed by a no-passing-zone sign located 2,260 feet from the junction. A reverse curve sign posting a 15-m.p.h. speed limit was located 1,880 feet from the junction, after which a driver approaches rumble strips located 1,330 and 1,210 feet from the junction. A

stop ahead sign was located 1,150 feet from the junction, and 400 feet beyond that was another junction sign. Beneath that junction sign, 750 feet from the junction itself, were 90° turn arrows and a sign indicating that Highway 4 ends. Five black posts, each with an orange reflector, were located between 130 and 740 feet from the junction on the south side of the highway. At locations 130 feet and 97 feet from the junction, on the outside of the 90° curve, were signs displaying a yellow and black arrow with a diamond-shaped set of nine reflectors underneath. The stop sign was placed 54 feet from the junction.

Plaintiff remembers nothing about the accident. However, the driver remembered crossing railroad tracks and then seeing a left-curve sign. Upon seeing a stop ahead sign, the driver slowed to approximately 40 m.p.h. by letting up on the gas pedal. After going through a slight curve to the left, an arrow sign came into his view on the right side of his headlights, and he then saw that the road curved abruptly to the right. He thereupon applied his brakes, thereby locking his wheels, and yelled at plaintiff to hold on, after which the truck rolled over. The driver admitted he did not see the 15-m.p.h. speed plate on the reverse curve sign and that had he seen it, he would have reduced his speed. The investigating safety patrol corporal found that the driver left 115 feet of skid marks.

There was evidence that the signs in place did not conform to the State's own signing plans or with the standards specified by the U.S. Department of Transportation in its Manual on Uniform Traffic Control Devices for Streets and Highways (1971). Specifically, the original signing plan called for a 30-inch right turn sign with a 15-m.p.h. speed plate placed ahead of the curve, which was later modified to require a 36-inch sign. Further, the aforedescribed manual requires a right turn sign where the recommended speed on a turn is 30 m.p.h. or less. The safe speed at the curve in question ranged from 10 to 18 m.p.h. As the foregoing recitation of the evidence concerning the signs actually in place demonstrates, no right turn sign had been installed.

Plaintiff offered to impeach the testimony of a witness for the State, that the signs actually in place were an appropriate alternative to the manual's requirements, by showing that the

State changed the signs after the accident in question. He also offered to prove that there had been other accidents at the site prior to the change, but none since. The trial court rejected these offers of proof.

An expert witness called by the plaintiff opined that a driver would have to be aware of the sharp curve at least 500 feet in advance of encountering it in order to make the necessary maneuver and that the signing in place was a contributing cause of the accident, but he could not say the accident would not have occurred had a right turn sign been in place. The investigating safety patrol corporal was also of the opinion that the "road conditions," presumably the signing or the abrupt nature of the curve itself, contributed to the accident.

The trial court, however, found that plaintiff had failed to prove by a preponderance of the evidence that the State was negligent and that any act of the State was the proximate cause or a proximately contributing cause of the accident, and determined that the sole proximate cause of the accident was the conduct of plaintiff's driver.

The State's conduct in maintaining its highways falls squarely within the purview of the State Tort Claims Act, §§ 81-8,209 et seq. *Fletcher v. State*, 216 Neb. 342, 344 N.W.2d 899 (1984). The findings of fact made by the trial court in such an action have the effect of a jury verdict. As such, they will not be disturbed on appeal unless clearly wrong. *Oldenburg v. State*, 221 Neb. 1, 374 N.W.2d 341 (1985); *Shepard v. State of Nebraska*, 214 Neb. 744, 336 N.W.2d 85 (1983); *Wakenight v. State*, 212 Neb. 798, 326 N.W.2d 52 (1982).

For purposes of our analysis, we assume, but do not decide, that the trial court erred in rejecting plaintiff's offers of proof, and further assume, but do not decide, that the trial court erred in concluding that the State was not negligent. That leaves us the task of determining whether it can be said the trial court was clearly wrong in finding that the sole proximate cause of the accident was the negligence of plaintiff's driver. If that finding is not clearly wrong, the judgment of the trial court must be affirmed, for proximate causation is a question of fact. See, *Maloney v. Kaminski*, 220 Neb. 55, 368 N.W.2d 447 (1985); *Brown v. State*, 205 Neb. 332, 287 N.W.2d 676 (1980).

A review of two recent cases is instructive. The latest and most relevant is *Fletcher v. State, supra,* a tort claim action. Therein, a passenger sued the State to recover for personal injuries sustained when the pickup truck in which he was riding was driven into a bridge abutment. The trial court entered judgment in favor of the passenger, but this court reversed that decision and dismissed the suit. In so doing it was noted that "[i]n support of his position that defendant was negligent, plaintiff had the burden of proving that the installation of the guardrail would have prevented his injury and that the failure to install such a guardrail was therefore the proximate cause, or a proximately contributing cause, of his injuries." 216 Neb. at 348, 344 N.W.2d at 903. The plaintiff had failed to prove such because there were no underlying facts or data to support the expert's conclusion that the presence of guardrails would have diverted the pickup back into its proper lane of travel with no injury to the passenger.

*Brown v. State, supra,* another bridge case in which guardrails were absent, affirmed the trial court's conclusion that the sole proximate cause of the collision was the negligence of the driver. *Brown* noted that while there was evidence as to the purpose and function of guardrails, the record contained "nothing which would indicate conclusively that had the guardrails been in position at the time of the accident the resulting accident and death of the decedent would not have occurred." 205 Neb. at 337, 287 N.W.2d at 680. The *Brown* court concluded that the trial court's finding concerning the sole proximate cause of the collision was not clearly wrong, since there was evidence that the driver, while not exceeding the posted speed limit, was traveling at an excessive speed under the weather conditions and was operating the automobile in an unsafe manner, failing to retain proper control.

Like the situation in *Fletcher,* there is nothing in the case before us which compels a conclusion that the accident would not have occurred had the right turn sign called for by the plans and manual been in place. And like the situation in *Brown,* the plaintiff's driver, having failed to see the 15-m.p.h. speed limitation, was driving at an excessive speed when he reached the curve. Therefore, the trial court's finding that the

negligence of the plaintiff's driver was the sole proximate cause of the accident cannot be said to be clearly wrong.

Accordingly, the trial court's judgment of dismissal is affirmed.

AFFIRMED.