# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1493

_____

John T. Jones Construction Co.,                    *
                                                   *
          Plaintiff – Appellee,                    *
                                                   *
     v.                                            *
                                                   *
Hoot General Construction Company,                 *
Inc.,                                              *
                                                   *
          Defendant – Appellant.                   *
                                                   *
Des Moines Metropolitan Wastewater                 *
Reclamation Authority; Black &                     *
Veatch Corporation,                                *
                                                   *
          Defendants.                              *


_____

No. 09-1494

_____

John T. Jones Construction Co.,                    *
                                                   *
          Plaintiff – Appellant,                   *
                                                   *
     v.                                            *
                                                   *
Hoot General Construction Company,                 *
Inc.,                                              *
                                                   *
          Defendant – Appellee,                    *

Appeals from the United States
District Court for the Southern
District of Iowa.

|                                              |     |
|----------------------------------------------|-----|
|                                              | *   |
| Des Moines Metropolitan Wastewater           | *   |
| Reclamation Authority; Black &               | *   |
| Veatch Corporation,                          | *   |
|                                              | *   |
|      Defendants.    | *   |

_____

Submitted: December 17, 2009
Filed: July 22, 2010

_____

Before BYE, BEAM, and COLLOTON, Circuit Judges.

_____

BYE, Circuit Judge.

Hoot General Construction appeals the district court's[1] verdict against it and in favor of John T. Jones Construction in an action brought on a contract between the two companies. Jones, in turn, appeals the district court's refusal to award certain liquidated damages and the district court's decision not to award attorneys fees related to claims against third parties. We affirm.

I

The Des Moines Metropolitan Wastewater Reclamation Authority (WRA) initiated a public improvement project to update one of its wastewater treatment facilities. WRA hired Black & Veatch Corporation (B&V) as engineers on the project and had B&V create a set of specifications so WRA could bid the project out to

_____

[1]The Honorable Ross A. Walters, United States Magistrate Judge for the Southern District of Iowa, presiding with the consent of the parties pursuant to 28 U.S.C. § 636(c).

-2-

general contractors. As part of the project, liners needed to be installed in the wastewater holding tanks to prevent erosion of the concrete interiors of those tanks. B&V created specifications for the tanks which described a particular liner system created by a company called Linabond. WRA required B&V to add the words "or equal" at the end of those specifications. The contract gave B&V, as project engineer, discretion to determine what to accept as "equal." WRA solicited bids for restoration of the wastewater treatment facility.

Jones Construction is a general contractor. Hoot Construction is a subcontractor specializing in installation of protective lining in wastewater storage tanks. Hoot only installs systems made by Linabond's main competitor, Ameron. Jones, which had worked with Hoot recently on a similar project, informed Hoot it was accepting subcontractor bids in order to compile a general bid for the WRA project. When Hoot examined the specifications for the project, it was concerned the liner specification appeared to be a "single source" specification, requiring the installation of Linabond. Hoot communicated this concern to Jones and informed Jones that Hoot would be proceeding on the "or equal" basis if it bid the project. Hoot contacted Ameron and received assurances from the company that Ameron systems are considered equal to Linabond in the industry. Hoot conveyed this information to Jones and informed Jones it had never had Ameron rejected as "or equal" on a project. Hoot then submitted a bid for the installation of its Ameron liner system. Jones used this bid in its main bid, and was awarded the project.

Around July 19, 2004, the contract administrator at Jones wrote to Hoot enclosing Jones's standard subcontract form and requesting that Hoot sign and return it within ten days. The subcontract required Hoot to perform the work as described in the main contract and incorporated the main contract as an exhibit. On July 22, 2004, Jones sent a fax informing Hoot the submittals for the project were due July 30, 2004. Phil Hoot, the owner of Hoot Construction, and Theta McDurham, a project administrator, altered the subcontract to add language basing compensation for the

project on actual square footage installed, as opposed to on the estimates in the bid. On August 4, 2004, McDurham sent the altered subcontract signed by Hoot to Jones and informed Jones the submittals would be mailed that day.

Hoot's company policy was to incorporate its original bid into any subcontract as a means of limiting the scope of its work to the contents of the bid. Hoot had followed this policy with Jones on the previous project. However, McDurham forgot to include the bid as an exhibit to the contract when she sent it to Jones. On August 11, 2004, before Jones responded to the original communication, McDurham faxed the bid to Jones and asked that it be attached as Exhibit B to the contract. She also called Scott Nath, Jones's project manager for the WRA project, who said either he or Jeff Jones, one of the owners of Jones Construction, would sign and return it to Hoot. McDurham's notes from the call read, "Scott Nath/John T. Jones/Des Moines, IA . . . requested 'Exhibit' be added to subcontract as was done for Springfield, MO subcontract. [Springfield was the previous project on which Hoot and Jones had worked together.] Done – faxed Exhibit (attached) Scott or Jeff T. Jones will approve, sign and return by fax." Jeff Jones signed the subcontract on August 18, 2004 and mailed it on Friday, August 20, 2004. Hoot received the signed and approved subcontract on August 23, 2004. The signed contract did not include Exhibit B. McDurham informed Mr. Hoot of the omission but Hoot did not pursue the matter.

After receiving the executed contract, and before the deadline specified by Jones, Hoot sent the project submittals to Jones. Jones received the submittals on August 25, 2004, and sent them on to B&V for approval the same day. On September 2, 2004, B&V rejected the liner submittal because it did not meet the specification requirements. Jones informed Hoot of the problem and Hoot contacted B&V directly to request an explanation. B&V responded, pointing out several differences in the systems (primarily relating to the way the systems are bonded to the underlying structure) on September 28, 2004. On October 20, 2004, Hoot contacted Ameron and requested help convincing B&V the systems were equal. After much back and forth,

B&V definitively rejected Ameron as an acceptable equivalent under the project specifications.

On December 1, 2004, Nath wrote to Hoot about an upcoming milestone date which could trigger liquidated damages for Jones under the general contract if the liner system were not installed by that time, and informing Hoot that Hoot would be responsible for such damages. Nath suggested Hoot either install the (more expensive) Linabond system or hire a Linabond installer to complete the work. On December 9, 2004, Nath spoke to McDurham and sent a fax informing Hoot that Jones would have to involve an attorney if Hoot did not respond to the December 1 letter.

On December 10, 2004, Hoot's attorney responded to Nath's letter. Referring to "Exhibit B to the Subcontract" she wrote Hoot had contracted to install an Ameron liner system and the wrongful rejection of Ameron as equal under the project specifications prevented Hoot's performance. The attorney accused Jones of breaching the subcontract by failing to gain approval for the Ameron system and requested Jones either approve the submittal or agree to termination of the contract. Jones wrote back explaining its position that Hoot was responsible for installing a lining system in accord with the specifications under the main contract as incorporated by the subcontract and suggesting more ways to attempt to convince B&V to accept an Ameron liner. Jones also explained Exhibit B (the Ameron bid) had not been incorporated into the executed subcontract. On January 7, 2005, Hoot's attorney wrote to Jones reiterating the contentions in her earlier letter and terminating the contract effective immediately. Jones replied with its position that Hoot was responsible for installing a liner in accord with the main contract and that Hoot would have to pay any costs Jones incurred for installation. Jones also rejected the attempted termination of the subcontract.

On February 22, 2005, Hoot sent a packet of information on the Ameron system to Jones, which submitted it to B&V as a resubmittal for the lining system work. The submittal was returned without review.

On March 24, 2005, Jones gave Hoot written notice that Hoot was in default under the contract and had three days to cure. On March 30, 2005, Jones followed that notice with a seven-day notice of contract termination informing Hoot that if it did not cure its breach of the contract Jones would hire others to complete the work at Hoot's expense. Hoot responded it had already terminated the contract.

On June 30, 2005, Jones entered into a new subcontract with Graham Construction, Inc. for installation of a Linabond system, and commenced this lawsuit on September 20, 2005. After a bench trial, the district court awarded damages to Jones in the amount of $232,807. Jones filed a motion to alter or amend the judgment, which the district court granted in part and denied in part, changing the award to $241,181.71, and awarding Jones attorney's fees and court costs. Hoot appealed, arguing there was no contract, or if there was a contract, it necessarily incorporated Exhibit B and Hoot was not required to install a non-Ameron system under it. Jones appealed the district court's decision not to award it certain liquidated damages under the contract and not to award attorneys fees related to claims against third parties B&V and WRA.

II

**Choice of Law**

We apply the choice-of-law rules of the forum state in a diversity action. Cicle v. Chase Bank USA, 583 F.3d 549, 553 (8th Cir. 2009). The contract at issue contains a choice-of-law provision which designates North Dakota law as the law of the contract. Jones argues North Dakota law applies to the question of existence of the

contract because both parties signed the agreement and because there is no evidence of a dispute with regard to that point.

The district court determined Iowa law applied to the question of formation because the choice-of-law provision can have no effect until the court determines the validity of the contract itself. Under Iowa choice-of-law rules, a court must apply the law of the forum with the "most significant relationship" to the contract. Gabe's Constr. Co., Inc. v. United Capitol Ins. Co., 539 N.W.2d 144, 146 (Iowa 1995). The parties agree that if the choice-of-law provision in the contract does not control, Iowa is the state with the most significant relationship to this contract. The Iowa Court of Appeals has applied Iowa law to determine the existence of a contract without regard to a choice of law provision in the purported contract. See Flanagan v. Consol. Nutrition, L.C., 627 N.W. 2d 573, 579 (Iowa App. 2001). The district court properly applied Iowa law to determine the existence of the contract. Once the existence of a contract is determined, the parties' intent as evinced in the choice-of-law provision controls, see Gabe's Construction, 539 N.W.2d at 146, and we will apply North Dakota law to questions of interpretation or construction of the contract.

III

**Extrinsic Evidence**

The parties engage in a protracted discussion about whether the district court should have considered extrinsic evidence. The district court properly determined this discussion has no application to the issue of formation. Parol evidence is admissible for the purpose of challenging the existence or validity of a contract. 29A Am. Jur. 2d Evidence § 1104; Walker v. Todd, 280 N.W. 512, 514 (Iowa 1938) ("Such evidence does not contradict the writing within the meaning of the parol evidence rule; that rule presupposes the existence of a valid contract.").

**Formation**

Our jurisdiction in this case is based on diversity, and in such cases we look to state law for the standard of review on each issue. Weasel v. St. Alexius Med. Ctr., 230 F.3d 348, 351 (8th Cir. 2000). Iowa classifies the question of whether a contract was formed to be one of fact, and affirms a lower court's determination of such question if it is supported by substantial evidence. Flanagan, 627 N.W.2d at 579. "Evidence is substantial for purposes of sustaining a finding of fact when a reasonable mind would accept it as adequate to reach a conclusion. When reviewing evidence for its substantiality, we view it in the light most favorable to upholding the trial court's judgment." Falczynski v. Amoco Oil Co., 533 N.W.2d 226, 230 (Iowa 1995) (internal citation omitted).

> All contracts must contain mutual assent. This assent is usually given through an offer and acceptance. An offer is a manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his or her assent to that bargain is invited and will conclude it. We look for the existence of an offer objectively, not subjectively.

Magnusson Agency v. Public Entity Nat. Company-Midwest, 560 N.W.2d 20, 26 (Iowa 1997) (citation and quotation marks omitted). It is undisputed that a number of offers and counteroffers were made in this case. The question is which, if any, of the acts of the parties constituted acceptance of one of those counteroffers.

"A binding contract also requires acceptance of the offer." Id. "The manifestation of mutual assent may consist wholly or partly of acts other than written or spoken words." Daeges v. Beh, 224 N.W. 80, 81 (Iowa 1929). The parties agree there was no binding contract up to the point Jones returned the executed subcontract to Hoot with Hoot's modified language included but without Exhibit B. The district court found there was no contract at that point because Jones had modified its

counteroffer (the subcontract it submitted to Jones with new language) before Jones accepted, by requesting Exhibit B (the bid) be made an addendum to the contract. The district court determined Jones's return of that subcontract without Exhibit B as an addendum constituted a counteroffer, as it failed to accept Exhibit B, a material term of Hoot's modified offer. The district court found Hoot accepted Jones's counteroffer by sending submittals to Jones as required for performance under the subcontract.

Hoot argues it never manifested an intent to be bound by the subcontract because it never agreed to install anything but an Ameron liner. However, the subcontract called for installation of a liner in accordance with the requirements in the general contract. Those requirements clearly related to a Linabond liner, with any other system having to be approved by the engineer as "equal." The general contract leaves the determination of what is "equal" to the discretion of the engineer. Hoot's owner testified at trial he noticed the specifications in the contract were for Linabond. He testified he called Ameron representatives who assured him Ameron was equal to Linabond in the industry. Hoot passed that information on to Jones's representatives. In twenty-five years of work, Hoot had never had an Ameron installation rejected. It was not unreasonable, based on that evidence, for the district court to conclude Hoot intended to be bound under the assumption the risk of rejection was negligible. Substantial evidence supports the district court 's conclusion that Hoot's transmission of the submittals by the deadline evinced intent to be bound by the subcontract.

**Exhibit B**

Construction and interpretation of a contract are questions of law and the reviewing court is not bound by the interpretation of the lower court. Hartig Drug Co. v. Hartig, 602 N.W.2d 794, 797 (Iowa 1999). Whether a contract is ambiguous is also a question of law. Id. Hoot argues if a contract exists, it includes Exhibit B (the bid), which Hoot included in its counteroffer by asking Jones to sign and return it with the executed contract. As discussed above, the district court found Jones rejected that

offer, and the inclusion of Exhibit B, and counter-offered by signing and returning the executed subcontract with Hoot's additional language incorporated but without Exhibit B attached. Hoot argues Jones agreed to make Exhibit B a part of the contract when Jones's agent (Nath) told Hoot it would sign and return Exhibit B with the subcontract.

The parties argue about Nath's apparent authority and whether Nath was capable of binding Jones to a contract. However, even if Nath had the authority to bind Jones, the district court properly found any agreement related to Exhibit B took place in the course of negotiations over the contract. North Dakota Century Code § 9-06-07 states "[t]he execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." However

> evidence of a consistent additional term is admissible to supplement an integrated agreement unless the court find that the agreement was completely integrated. Whether an agreement is completely or partially integrated is to be determined by the court as a question preliminary to determination of a question of interpretation or to application of the parol evidence rule.

Felco, Inc. v. Doug's N. Hill Bottle Shop, Inc., 579 N.W.2d 576, 581 (N.D. 1998) (internal quotation marks omitted). "[A]n agreement is not completely integrated if the written agreement omits a consistent additional agreed term which is... such a term as in the circumstances might naturally be omitted from the writing." Id. The subcontract includes an integration clause stating the agreement "represents the entire integrated agreement between the parties hereto and supersedes all prior negotiations, representations, or agreements, either written or oral." Hoot contends Exhibit B necessarily limits the scope of the work Hoot agreed to perform to the contents of the subcontractor bid. However, the subcontract itself contains a provision delineating the scope of work as that required under the main contract. The contract is therefore

not silent on the scope of the work to be performed and any agreement related to Exhibit B is not admissible to vary the terms of the contract.

Hoot also argues Exhibit B shows the parties never intended for Hoot to install any system other than Ameron and therefore, Hoot cannot be contractually obliged to do so. "A contract may be explained by reference to the circumstances under which it was made and the matter to which it relates." N.D. Cent. Code § 9-07-12. Parol evidence is "inadmissible to vary or contradict the terms of a written contract between the parties to the contract." Schwarting v. Schwarting, 310 N.W.2d 738, 739 (N.D. 1981) (quoting Dardis v. Eddy Bros., 223 N.W.2d 674, 679 (N.D. 1974)). If, however, an ambiguity exists in the contract, parol evidence is admissible to explain existing essential terms or to show the parties' intent. Atlas Ready-Mix of Minot v. White Props., Inc., 306 N.W.2d 212, 220 (N.D. 1981). The terms of a contract are ambiguous when the language is subject to more than one construction or "when good arguments can be made for either of two contrary positions as to the meaning of a term in a document." Bye v. Elvick, 336 N.W.2d 106, 111-12 (N.D. 1983). Hoot argues Exhibit B was part of the subcontract and renders the subcontract ambiguous. This circular argument fails because Exhibit B is not part of the subcontract and the plain words of the subcontract incorporate the standards set forth in the general contract and are not ambiguous.

The district court properly concluded Exhibit B, which was never signed and never returned to Hoot, was not part of the contract and cannot be admitted for the purpose of varying or rendering ambiguous the terms of the contract.

**Liquidated damages**

Jones appeals the district court's decision not to award it certain liquidated damages under the contract. We review the district court's interpretation of the contract as a question of law de novo. Hartig, 602 N.W.2d at 797. However, if the

interpretation was predicated upon extrinsic evidence, the findings of the trial court are binding on appeal if supported by substantial evidence. Id.

The district court determined Hoot was responsible for some but not all of the liquidated damages Jones had to pay to WRA under the main contract. The court did not award Jones damages related to Jones's failure to meet "Milestone 1" under the main contract because it determined the delays which resulted in the damages were caused by weather and not by Hoot's failure to perform the subcontract. The record shows Jones was aware that Hoot was submitting an "or equal" bid that would have to be approved by the engineers. The parties were still engaged in negotiations with WRA and the engineer for most of this delay and Hoot had not yet refused to perform under the subcontract. Jones started construction with time to complete the project but weather delayed the process by several months, putting it past the Milestone 1 deadline. The district court's determination that the damages arose from a weather delay, and not from the dispute over the subcontract, was supported by substantial evidence.

**Attorney fees**

Jones appeals the amount of attorney fees the district court granted under the contract. We review the district court's interpretation of the attorneys fees provision of the contract de novo; underlying findings of fact must be supported by substantial evidence. Hartig, 602 N.W.2d at 797. Whether a contract is ambiguous is a question of law. Id. The district court found the contract clearly granted attorney fees with respect to Jones's prosecution of the claims against Hoot but found the contract was ambiguous as to whether Hoot was responsible for fees incurred on claims against WRA and B&V.

The contract provides,

> [s]hould either party employ an attorney to institute suit of [sic] demand arbitration to enforce any of the provisions hereof, to protect its interest in any matter arising under this Agreement, to collect damages for the breach of the Agreement, . . . the prevailing party shall be entitled to recover reasonable attorney's fees, costs, charges, and expenses expended or incurred therein.

The district court found Jones was the "prevailing party" with respect to claims against Hoot and found the contract required Jones to prevail against Hoot to recover any attorneys fees from Hoot under the contract. However, the court found the contract was ambiguous as to whether Jones also had to prevail on its claims against third parties in order to recover from Hoot fees related to prosecuting those claims. The court found there was no relevant extrinsic evidence on this question and interpreted the ambiguity against Jones because under N.D. Cent. Code § 9-07-09 "the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. The promisor is presumed to be such a party." The district court determined the claims against the municipality and the engineer did arise from the contract but found Jones would be entitled to recover attorney fees related to them only if Jones were the "prevailing party" on each of the claims.

The district court found Jones was not the prevailing party with respect to its claims against WRA and B&V and was not entitled to fees related solely to those claims. The district court then performed a detailed analysis of the requested fees and discounted some of the fees it determined were attributable to the claims against WRA and B&V. The district court did not discount all fees related to those claims because it found there was a substantial overlap and much of the work done on those claims would have been necessary to prepare the case against Hoot. Jones does not argue any error in those calculations but only argues the district court erred in interpreting the

-13-

contract. The district court properly applied North Dakota law to interpret the contract against Jones and we affirm the award of attorney's fees.

**Jones's cross appeal**

In its cross-appeal, Jones asks this court to affirm the district court's judgment on the alternative grounds of promissory estoppel or indemnity. However, since we are affirming the district court's judgment on the merits as decided, there is no need to consider the arguments set forth in the cross-appeal.

We affirm.

_____