# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 11-3044/3081

_____

| | | |
|---|---|---|
| Juston Pohl, | * | |
| | * | |
| Appellee/Cross-Appellant, | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| County of Furnas, a Nebraska | * | |
| Political Subdivision, | * | |
| | * | |
| Appellant/Cross-Appellee. | * | |

_____

Submitted: May 16, 2012
Filed: June 26, 2012

_____

Before MURPHY, BENTON, and SHEPHERD, Circuit Judges.

_____

MURPHY, Circuit Judge.

After Juston Pohl was injured in an automobile accident in Furnas County, Nebraska, he brought this negligence action against the county. Pohl alleged that the accident was caused by the county's failure to have a properly placed and maintained road sign at the scene. The county responded that the accident was caused by Pohl's own negligent driving. The case was tried to the court[1] which found both parties negligent, apportioning 60% of the negligence to the county and 40% to Pohl, and

_____

[1]The Honorable Laurie Smith Camp, Chief Judge, United States District Court for the District of Nebraska.

awarding Pohl $407,163.68 in damages.  The county appeals, and Pohl cross appeals.  We affirm.

I.

Juston Pohl, a resident of Michigan, traveled to rural Furnas County, Nebraska in December 2007 for a hunting trip and stayed at the farm of family friends Kimberly and Delaine Soucie.  A few days after his arrival, he drove to a high school basketball game in nearby Cambridge, Nebraska.  At around 9 p.m. that evening, he began his return trip to the farm traveling south on Highway 47.  Light snow was falling.

The Soucies' farm is located two miles west of Highway 47 on Road 719, but Pohl mistakenly turned west onto Drive 719 which is located a half mile north of Road 719.  Drive 719 is a gravel road that does not have a posted speed limit but is subject to a general statutory limit of 50 miles per hour.  See Neb. Rev. Stat. § 60-6, 186(1)(c).  Unlike Road 719 which continues in a straight line west of Highway 47, Drive 719 has a ninety degree curve one mile after its intersection with Highway 47.  At the time of Pohl's accident, a posted sign was placed at least 110 feet in front of the curve.  The sign was two feet square with a yellow background and contained a black arrow with a ninety degree bend.

After turning onto Drive 719, Pohl accelerated to 63 mph, traveling with his high beam headlights on.  When Pohl neared the warning sign, he braked too late to prevent the car from missing the curve and going off the road.  The car hit an embankment, rolled, and came to rest upside down in a culvert.  Pohl lost consciousness.  When he came to, he realized he could not move his legs.  Since he was unable to walk, he remained in the car all night hoping to be rescued.  No help had arrived by daybreak, and Pohl managed to drag himself to a nearby farmhouse where the residents called an ambulance.  It was later determined that he had a

fracture and cord compression in his thoracic spine as well as frostbite in his feet. He underwent a decompression and fusion to treat the spinal injury.

Pohl sued the county for common law negligence under the district court's diversity jurisdiction. He alleged that his injuries were the result of the county's negligent placement of the sign warning about the curve and its negligent failure to maintain it. He sought damages for his medical expenses, physical pain and mental suffering, and lost wages.

At trial Pohl offered his own testimony and that of a traffic engineer and other lay witnesses. Pohl testified about the night of the accident and his injuries. Although it had been snowing that evening, Pohl explained that he had not needed to clear his windshield when leaving town, that the snow had not impeded his view, and that the car had had normal traction on the road. Pohl said that when he turned onto Drive 719, he believed that he was on Road 719 with a "straight shot" to the Soucies' farm. He testified that he had no memory of that night from shortly after turning onto Drive 719 until he regained consciousness after the accident. Thus, he did not remember seeing the sign or braking prior to leaving the roadway.

Three members of the Soucie family who had attended the same basketball game testified that the snow that night had not impaired driving conditions either by making roads slippery or reducing visibility. They also testified that they had driven on Drive 719 with high beam headlights in the past. After being shown flash photographs of the traffic sign made after Pohl's accident, they stated that the photos accurately depicted how the sign would have looked to a night driver using high beams.

Ronald Hensen, a traffic engineer, offered expert testimony regarding the sufficiency of the sign. He testified that the sign did not comply with the standards set by the United States Department of Transportation's Manual on Uniform Traffic

Control Devices (the Manual), which governs traffic control signs in Nebraska. See Neb. Rev. Stat. §§ 60-6,118, 60-6,121; see also 23 C.F.R. § 655.601 (incorporating the Manual by reference into the Code of Federal Regulations). The sign was deficient, he said, because it was heavily scratched and thus not retroreflective. The word "retroreflectivity" is defined in the Manual as a surface property "allow[ing] a large portion of the light coming from a point source to be returned directly back to a point near its origin." Manual § 1A.13(62).[2] Hensen explained that because the sign lacked retroreflectivity, the 110 foot distance between the sign and the curve was not enough to provide drivers adequate notice of the curve ahead. He testified that a distance of at least 300 feet would have been needed to comply with the Manual and that "I don't know that I've ever seen in place a sign that defective." In discussing the accident, he explained that had Pohl been traveling at the speed limit of 50 mph, he would have entered the curve at a speed of 45 mph and would have still left the roadway.

The county's case consisted of two expert witnesses and hundreds of photographs of the accident scene. Gregory Vandenberg, a Nebraska state trooper who specializes in accident reconstruction, testified that following the crash he had analyzed data from the car's airbag control module which is also referred to as the black box. The black box records the vehicle's speed and braking pattern for the five seconds prior to deployment of the airbag. Based on these data he determined that the car had been traveling at 63 mph on Drive 719 and that Pohl had applied the brakes when he was closely aligned with the sign, slowing the car to 48 mph at the time it left the roadway. Vandenberg initially testified that he had assumed that Pohl had braked in response to seeing the sign, but later clarified that the braking could have been in response to viewing the actual curve ahead or in response to some other

_____

[2]A new version of the Manual was released in 2009. All citations here are to the 2003 version, revision 1, released in November 2004, which was in effect at the time of the accident. The cited version of the Manual is available at http://mutcd.fhwa.dot.gov/pdfs/2003r1/pdf-index.htm.

stimulus.  If Pohl had been traveling at the speed limit and had braked when his car was aligned with the sign, the trooper's opinion was that the car would have slowed to a speed where Pohl could have safely negotiated the curve.  He also explained that had Pohl been traveling at the speed limit but failed to steer, he would have left the roadway at 15 mph and had a less severe accident because the car likely would have stopped before colliding with the embankment.

Traffic engineer Jerry Graham also testified for the county.  Based on flash photographs of the sign taken at night, Graham concluded that the sign was "faded" but had "some retroreflectivity to it."  He further testified that after investigating the curve on Drive 719, he determined that it could be safely navigated at 30 mph.  Based on this observation and the 50 mph speed limit, he concluded from a table in the Manual that any warning sign should have been placed at least 100 feet from the start of the curve.  See Manual tbl.2C-4.  The sign's placement 110 feet from the curve was therefore in compliance with the Manual and would have "provided a reasonable and prudent driver . . . with the information necessary to reasonably, safely and lawfully use Drive 719."  On cross examination he conceded, however, that calculations based on Table 2C-4 assume that a sign is legible when a driver is 250 feet from it.  See id. n.1.

II.

In its findings of fact, the district court determined that the sign was abraded and lacked retroreflective paint.  It was therefore not legible to a nighttime driver traveling with headlights until the driver was within 100 feet of the sign.  The court also found that Pohl had "reacted to the left-hand turn warning sign–or to some other indicia of danger–when his car was closely aligned with the sign."  Had Pohl been traveling at the speed limit of 50 mph and all other variables remained constant, the court determined that

-5-

his car would have gone off the road at the same location at a speed of 15 miles per hour. If the car reached the embankment at all, the impact would have been much less severe, and, in any event, the car would have come to rest before reaching the culvert.

The district court found that the county was negligent because of the "combination of the sign's lack of retroreflectivity and its placement. Had the sign been retroreflective, its placement in proximity to the curve may have been adequate." It further found that this negligence and Pohl's negligence in driving 13 miles over the speed limit were the proximate causes of his accident and injuries. In assessing the responsibility for the accident and Pohl's injuries the court allocated 60% of the negligence to the county and 40% to Pohl. The district court then calculated that Pohl was entitled to $678,606.14 in damages for medical expenses and pain and suffering, and awarded him $407,163.38 following a reduction for his comparative negligence.

The county appeals, arguing that the district court erred by finding that it was negligent in its maintenance and placement of the sign, finding that its negligence was a proximate cause of the accident, and in apportioning negligence between the parties. Pohl cross appeals, contending that the district court erred in its finding that his negligence was a proximate cause of his injuries and in its apportionment of negligence.

When reviewing a district court's decision following a bench trial in a diversity action, "we look to state law for the standard of review on each issue." See John T. Jones Constr. Co. v. Hoot Gen. Constr. Co., 613 F.3d 778, 783 (8th Cir. 2010). To recover in a negligence action, "a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and damages." A.W. v. Lancaster Cnty. Sch. Dist. 0001, 784 N.W.2d 907, 913 (Neb. 2010). The parties agree that the county owed a legal duty to road users to maintain and properly place its road signs. The county contends, however, that the district court erred by finding

that it had breached that duty or alternatively that its breach was a cause of Pohl's injuries.

## III.

Under Nebraska law, the question of whether a defendant is negligent by breaching a duty of care is a question of fact which is reviewed for clear error. See Downey v. W. Cmty. College Area, 808 N.W.2d 839, 850 (Neb. 2012). The district court's finding of negligence was based on its determination that the traffic sign was not in compliance with the Manual because it was not retroreflective and was placed too close to the curve. The county does not contest the district court's reliance on the Manual, but, it argues that the district court's findings were unsupported by the trial record.

The determination that the sign was not retroreflective was supported by Hensen's testimony that the sign was scratched and did not reflect adequate light to meet the Manual's requirement that a sign reflect "a large portion of the light coming from a point source to be returned directly back to a point near its origin." Manual § 1A.13(62). It was also supported by some of the nighttime flash photographs in evidence on which the warning sign for the curve was not visible, but a distant retroreflective sign was. Although Graham testified that the curve sign was retroreflective, he conceded that it was "faded" and had only a "low level" of retroreflectivity.

The court's finding that the sign was placed too close to the curve was also not clearly erroneous. The county points to Graham's testimony that the sign was adequately placed because it met the Manual's requirements for a 30 mph curve on a road which has a 50 mph speed limit. As Graham conceded on cross examination, however, these requirements are based on an assumption that the sign is legible from 250 feet. See Manual tbl.2C-4, n.1. Since a sign must be legible when a driver is 250

feet from it and it must be placed 100 feet before the curve, see id., the sign must be legible 350 feet from the curve. Nighttime flash photographs indicated however that the sign was not legible 300 feet from the curve, meaning that it did not meet the standard. While the county criticizes the district court for relying on these photographs because it claims that a camera flash illuminates objects differently than a car's headlights do, testimony from the Soucies was that the flash photographs illustrated what a driver would have seen at night when using his high beam headlights. Because the record supports the district court's findings that the sign was neither retroreflective nor adequately placed to warn nighttime drivers, the court did not err in finding the county negligent.

We next turn to the county's argument that the district court erred in determining that its negligence was a proximate cause of the accident. See Wilke v. Woodhouse Ford, Inc., 774 N.W.2d 370, 382 (Neb. 2009). Like the determination of negligence, proximate cause is a question of fact and the district court's findings are only set aside if clearly erroneous. Bean v. State, 382 N.W.2d 360, 362 (Neb. 1986). To demonstrate proximate cause in Nebraska a plaintiff must show that "(1) [w]ithout the negligent action, the injury would not have occurred, commonly known as the 'but for' rule; (2) the injury was a natural and probable result of the negligence; and (3) there was no efficient intervening cause." Wilke, 774 N.W.2d at 382. To establish proximate cause, "[a] plaintiff is not bound to exclude the possibility that the [event] might have happened in some other way." World Radio Labs., Inc. v. Coopers & Lybrand, 557 N.W.2d 1, 12 (Neb. 1996) (alterations in original) (citation omitted). Rather, he must only adduce evidence sufficient to "fairly and reasonably justify the conclusion that the defendant's negligence was the proximate cause of [his] injury." King v. Crowell Mem'l Home, 622 N.W.2d 588, 594 (Neb. 2001).

The county contends that there were several equally likely causes of the accident, including that Pohl was not maintaining a proper lookout and thus failed to see the sign, that he saw it and failed to heed it, or that the falling snow prevented him

from seeing it. It urges that because Pohl cannot remember whether or not he saw the sign before leaving the road, the district court's proximate cause determination was based on speculation rather than evidence. The county further highlights the district court's finding that "a preponderance of the evidence indicates that Pohl reacted to the left-hand turn warning sign–or to some other indicia of danger–when his car was closely aligned with the sign." Because the district court found that Pohl could have been reacting to something other than the sign when braking before leaving the road, the county contends that a sign placed farther from the curve would have made no difference.

In support of its argument the county relies on Swoboda v. Mercer Management Company, 557 N.W.2d 629 (Neb. 1997). In Swoboda, a woman fell while ascending a staircase and alleged that her fall was caused by a ramp which negligently extended onto a stairway landing. Id. at 631. The defendant countered that the woman had fallen by tripping over the top step. Id. Because the woman could not remember how she had fallen and no one had seen the fall, the Nebraska Supreme Court upheld the trial court's grant of summary judgment to the defendant, concluding that the plaintiff could not establish the proximate cause of her fall because a jury would be left to conduct "guesswork" in deciding between the two theories of causation. Id. at 632–33.

Unlike in Swoboda where there was no evidence supporting one causal theory over another, evidence was produced at trial in this case which supports the theory that the legibility and placement of the sign caused Pohl's accident. While Pohl could not remember whether or not he saw the sign prior to the accident, direct evidence is not required for a plaintiff to demonstrate proximate cause. See King, 622 N.W.2d at 594. The county's own expert Vandenberg testified that Pohl had braked when he was closely aligned with the sign. That evidence gives rise to a reasonable inference that Pohl slowed the car in response to the sign and thus would have slowed earlier and avoided the crash or its severity had the sign been placed further from the curve

or been legible from a greater distance. Hensen testified that inadequate signage leads to a higher probability of accidents and opined that the inadequacy of the warning sign here was a cause of the accident. By contrast, the county's alternate theories of causation were not supported by the record. There was no evidence that Pohl had not been paying attention to the road prior to the accident, and the evidence indicated that the falling snow had not impeded visibility. As for the county's argument that Pohl had seen the sign and failed to heed it, the evidence that he braked when aligned with the sign supports the contrary finding.

The district court's finding that Pohl may have braked in response to "some other indicia of danger" does not contradict its proximate cause determination. The fact that Pohl may have braked because he saw the curve does not eliminate the possibility that he would have braked earlier had the sign been properly placed or made retroreflective. Because the sign was placed too close to the curve, the curve itself may have captured Pohl's attention before he could see the sign. If it had been placed further from the curve or had been visible from a greater distance, the sign itself could have caught his attention and caused him to brake earlier. Viewing the record as a whole, the evidence at trial was sufficient to "fairly and reasonably justify the conclusion that the defendant's negligence was the proximate cause of [Pohl's] injury." King, 622 N.W.2d at 594.

The county also argues that Pohl cannot show proximate cause because his speeding was an efficient intervening cause. "[A]n efficient intervening cause is new and independent conduct of a third person, which itself is a proximate cause of the injury in question and breaks the causal connection between original conduct and the injury." Zeller v. Cnty. of Howard, 419 N.W.2d 654, 658 (Neb. 1988). Nebraska law makes clear however that an intervening cause cuts off a tortfeasor's liability only when it is not foreseeable. Id. Testimony at trial indicated that traffic engineers assume that drivers will exceed the speed limit by 10 to 15 mph on a 50 mph road, and thus Pohl's travel 13 mph in excess of the speed limit was readily foreseeable.

-10-

We finally address the county's argument that even if its placement of the sign was negligent and a proximate cause of the accident, the district court erred by undervaluing Pohl's contributory negligence. Contributory negligence occurs where the plaintiff breaches a duty of care and his breach "concur[s] and cooperat[es]" with the defendant's negligence to form a proximate cause of the injury. Skinner v. Ogallala Pub. Sch. Dist. No. 1, 631 N.W.2d 510, 526 (Neb. 2001) (citation omitted). Under Nebraska law, a plaintiff is barred from recovery if his negligence is equal to or greater than that of the defendant. See Neb. Rev. Stat. § 25-21,185.09. Contributory negligence is an affirmative defense that must be proved by the party asserting it. Carpender v. Bendorf, 516 N.W.2d 619, 622 (Neb. 1994). Since the existence of such negligence is a question of fact, our review is again for clear error. See Skinner, 631 N.W.2d at 519.

The county first contends that the trial court erred in its assessment of contributory negligence because it should have found that Pohl's contributory negligence in speeding exceeded the county's negligence, thus barring recovery. In support of this argument, it points to Vandenberg's testimony indicating that had Pohl been traveling at the speed limit, he would have been able to negotiate the curve successfully if he had braked when aligned with the sign. This testimony was contradicted, however, by Hensen's testimony that had Pohl been traveling at the speed limit, his speed at the curve would have still been too great to negotiate it successfully. Given this conflicting testimony, we cannot say that the district court clearly erred by not finding that Pohl's negligence exceeded that of the county. Cf. Anderson v. City of Bessemer, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

The county further contends that the district court should have found that Pohl was contributorily negligent in two additional ways. First it argues that he was negligent by driving faster than conditions allowed because it was snowing on the

-11-

night of the accident and he was unfamiliar with Drive 719. See Neb. Rev. Stat. § 60-6,185. It also urges that he was negligent by failing to maintain a proper lookout. See Willey v. Parriott, 140 N.W.2d 652, 655 (Neb. 1966). We conclude that the district court did not commit clear error by not making these findings. Multiple witnesses testified that the snow on the night of the accident did not impede visibility or cause slippery road surfaces. As for the county's argument that Pohl failed to maintain a proper lookout, the only evidence would be the fact that his vehicle left the roadway. Given the county's negligence in placing and maintaining the warning sign, the fact that Pohl left the roadway does not necessarily indicate that he was not keeping a proper lookout.

On cross appeal, Pohl argues that the district court erred in finding that his contributory negligence by speeding was a proximate cause of the accident because the county failed to establish that the accident would not have happened had he been driving the speed limit. The district court found in Pohl's favor on this point, however. Specifically, it determined that "[i]f Pohl had been traveling at the legal speed limit of 50 miles per hour . . . and all other variables remained constant . . . his car would have gone off the road at the same location at a speed of 15 miles per hour." The district court's assignment of 40% of the negligence to Pohl indicates that it considered his negligence as a proximate cause of only the severity of his injuries.

Pohl next contends that the district court erred in finding that his injuries would have been less severe had he not been speeding. He essentially argues that because no evidence was introduced from a biomedical expert indicating how he would have suffered fewer injuries had he been traveling at a slower speed, the district court's finding of proximate cause was clearly erroneous. Pohl cites no authority indicating that such evidence is required where the record contains evidence that the accident would have been less severe had the plaintiff not been speeding. Vandenberg's testimony suggested that had Pohl been traveling at the speed limit when he braked and still gone off the road, he would have been traveling at only 15 mph on leaving

-12-

the road as opposed to 48 mph. There would then have been a "less severe collision," and the car "likely . . . would have stopped short of the . . . embankment." Given this evidence, it was reasonable to find that the accident would have been less severe and Pohl would have sustained less serious injuries had he not been speeding. Accordingly, the district court did not clearly err by finding that his negligence at the time of the crash was a proximate cause of his injuries.

We finally address Pohl's contention that even if the district court's determinations regarding negligence and proximate cause were correct, it should have apportioned less negligence to Pohl. The apportionment of negligence "is solely a matter for the fact finder, and its action will not be disturbed on appeal if it is supported by credible evidence and bears a reasonable relationship to the respective elements of negligence proved at trial." Tadros v. City of Omaha, 694 N.W.2d 180, 187 (Neb. 2005). As discussed above, the evidence supported the district court's finding that the negligence of both parties contributed to Pohl's injuries. Attributing 40% of the negligence to Pohl was reasonable considering the evidence that the accident would still have happened at a lower speed but with less severe injuries.

Accordingly, we affirm the judgment of the district court.

_____